In the DISCIPLINARY MATTER INVOLVING Bryan SCHULER, Respondent.

No. S–3986.

Supreme Court of Alaska.

Sept. 20, 1991.

Bryan Schuler, pro se.

Stephen J. Van Goor, Bar Counsel, Anchorage, for the Alaska Bar Ass'n.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

### I. FACTUAL AND PROCEDURAL BACKGROUND

Bryan E. Schuler, while employed as a District Attorney for the State of Alaska in Bethel, "enter[ed] the Alaska Commercial Company Store in Bethel, and place[d] several cassette tapes in a day-pack [he] was carrying. [He] did intend to leave the store without paying for them."

Upon perceiving that store employees were observing him, Schuler abandoned the day-pack. He went home after a store employee told him not to return to the store. Later, Schuler was requested to come to the police station. After consultation with counsel, he declined to make a statement.

A criminal complaint was filed against Schuler. It alleged that he did "unlawfully, knowingly, and with intent to appropriate and deprive the owner of merchandise, conceal about his person unpurchased merchandise valued in excess of $50.00 ...," a class A misdemeanor under AS 11.46.-220(a), (c)(2). Schuler entered a plea of no contest and was convicted of the offense.

On December 4, 1987, imposition of sentence was suspended and Schuler was placed on probation until June 4, 1989, subject to the conditions that he maintain good behavior, that he continue with counselling as long as necessary, that he complete 100 hours of community service, and that he commit no violations of the law. Schuler has since successfully completed the terms of his probation, and the criminal case has been dismissed.

On January 13, 1988, this court entered an order of interim suspension of Schuler from the practice of law pursuant to Alaska Bar Rule 26(a), on the ground that the conviction involved a serious crime under Alaska Bar Rule 26(b). We referred the matter to Alaska Bar Association Discipline Counsel for the initiation of a disciplinary proceeding. Interim suspension was to continue until final disposition of the matter.

On December 26, 1989, Discipline Counsel and Schuler stipulated that the conviction warranted that Schuler be suspended from the practice of law for six months, and that he take and pass the Multistate Professional Responsibility Exam (MPRE). The stipulation was accepted by the Disciplinary Board, which in turn recommended that it be accepted by this court. We rejected the stipulation "on the grounds that [Schuler's] act appear[ed] to be a serious crime under the Model Standards, Standard 5.11(a), for which disbarment is generally appropriate." *In the Disciplinary Matter Involving Bryan E. Schuler,* No. S-3263 (July 12, 1989). We remanded the matter to the Board. *Id.*

Discipline Counsel and Schuler thereafter entered a revised stipulation for discipline by consent, which again was accepted by the Disciplinary Board, and in turn recommended for acceptance by this court.

The revised stipulation recommends a two-year suspension from the practice of law, effective January 13, 1988 (the date interim suspension was imposed), and requires that Schuler take and pass the MPRE within one year of this court's final order in this matter.

Thereafter this court, *sua sponte,* requested the parties to provide it with statements "setting out all criminal and juvenile convictions, criminal complaints or arrests involving Mr. Schuler. The statement shall include appropriate dates and dispositions for each conviction, complaint, or arrest." *In the Matter Involving Bryan E. Schuler,* No. S-3986 (August 17, 1990). Responses from both Schuler and the Alaska Bar Association disclosed that in 1973, Schuler was convicted of petty larceny by the District Court for the State of Alaska.

Upon receipt of this information, we again remanded the matter to the Disciplinary Board "so that the Disciplinary Board may reconsider its consent to the revised stipulation in light of respondent's 1973 conviction." On November 6, 1990 the Disciplinary Board filed its Determination on Reconsideration. In this document the Board advised that it "considered the 1973 shoplifting conviction of respondent. Because the 1973 conviction predates respondent's admission to the Bar and is relatively dated, the Board determined not to modify the stipulation." We now review that stipulation.

## II. APPROPRIATE SANCTION

■ In determining the appropriate sanction to be imposed, we are not bound to accept the Board's recommendation, but may exercise our independent judgment. *In re Buckalew,* 731 P.2d 48, 51 n. 7 (Alaska 1986). In this matter we are "guided," but not bound, by the ABA Standards for Imposing Lawyer Sanctions (1986). *See Burrell v. Disciplinary Bd.,* 777 P.2d 1140, 1143 (Alaska 1989); *Buckalew,* 731 P.2d at 52 ("[W]e will refer to the ABA Standards and methodology as an appropriate model for determining sanctions for lawyer misconduct in this state."). In determining proper sanctions, the ABA Standards provide for a test under which four questions are posed:

(1) What ethical duty did the lawyer violate? (A duty to a client, the public, the legal system, or the profession?)

(2) What was the lawyer's mental state? (Did the lawyer act intentionally, knowingly, or negligently?)

(3) What was the extent of the actual or potential injury caused by the lawyer's misconduct? (Was there a serious or potentially serious injury?)

(4) Are there any aggravating or mitigating circumstances?

*Buckalew,* 731 P.2d at 52 (citing ABA Standards, Theoretical Framework, ABA/BNA at 01:805–06). These questions are addressed within a three-step methodology:

The initial step requires that we answer the first three [questions] of the ABA test set forth above. Next, we must look to the ABA Standards to discern what sanction is recommended for the "type" of misconduct found in our initial inquiry. After determining the recommended sanction, we must ascertain whether any aggravating or mitigating circumstances exist which warrant increasing or decreasing the otherwise appropriate sanction. *See,* ABA Standards, Methodology, ABA/BNA at 01:803–04.

*Id.*

**A. Step One: The Ethical Duties Violated, the Mental State of Schuler, and the Injury or Potential Injury.**

**1. *Ethical duties***

▇ Schuler entered a plea of no contest to, and was convicted of, a charge of concealment of merchandise, which required as one of its elements an "intent to deprive the owner ... or ... intent to appropriate." AS 11.46.220(a). Schuler admits that he placed the tapes in his day-pack "intend[ing] to leave the store without paying for them." Such conduct violates both Disciplinary Rule (DR) 1–102(A)(3) and (4): "A lawyer shall not: ... (3) Engage in illegal conduct involving moral turpitude [nor] (4) Engage in conduct involving dishonesty...." [1]

The duties violated[2] by Schuler were ones owed to the public. "The public expects the lawyer to be honest and to abide by the law; public confidence in the integrity of officers of the court is undermined when lawyers engage in illegal conduct." (Citing, *inter alia,* DR 1–102(A)(3) and (4)). ABA Standards, Violations of Duties Owed to the Public, § 5.0, ABA/BNA at 01:828–29.[3]

**2. *Mental state***

This part of the test requires a determination of Schuler's mental state with reference to his placement of the tapes into his day-pack. According to the ABA Standards, Schuler's mental state can be described in descending order of culpability

---

**1.** *In re Preston,* 616 P.2d 1 (Alaska 1980), implies that misdemeanor theft involves moral turpitude. In discussing the interim suspension rule, Bar Rule 26 (then Rule 23), we stated: "Certain misdemeanors, *dependent upon the moral turpitude of the attorney,* are defined as serious crimes." *Id.* at 5 (emphasis added). Included in this list of serious crimes are felonies and lesser crimes, "a necessary element of which ... involves ... misappropriation [or] theft." *Id.* at 3 n. 3. Likewise, the Supreme Court of Oregon has held that "a misdemeanor conviction for the crime of theft is a conviction involving moral turpitude." *In re Carstens,* 683 P.2d 992, 996 (Or.1984). This is in accordance with other courts which have "defined moral turpitude as acts which evidence 'a fraudulent or dishonest intent.'" *In re Wines,* 135 Ariz. 203, 660 P.2d 454, 456 n. 4 (1983). *See also Chadwick v. State Bar,* 49 Cal.3d 103, 260 Cal.Rptr. 538, 776 P.2d 240, 245 (1989) ("Crimes which necessarily involve an intent to defraud, or dishonesty for personal gain ... may establish moral turpitude.").

**2.** Conduct which results in a conviction of a serious crime pursuant to Alaska Bar Rule 26(b) is another independent ground for discipline. Alaska Bar R. 15(a)(1).

**3.** Similarly, Ethical Consideration 1–5 notes:

Because of his position in society, even minor violations of law by a lawyer may tend to lessen public confidence in the legal profession. Obedience to law exemplifies respect for law. To lawyers especially, respect for the law should be more than a platitude.

as intentional, knowing or negligent.[4]

■ Schuler's conviction is conclusive proof of all of the elements of the crime for which he was convicted. *See Chadwick v. State Bar*, 49 Cal.3d 103, 260 Cal.Rptr. 538, 776 P.2d 240, 245 (Cal.1989) ("A criminal conviction, including a plea of guilty, is conclusive proof that the attorney committed all acts necessary to constitute the offense.").[5] As noted above, one of those elements was an *"intent* to deprive the owner of … or … *intent* to appropriate" the tapes. AS 11.46.220(a) (emphasis added). For purposes of Alaska criminal law, "a person acts 'intentionally' … when the person's conscious objective is to cause [the proscribed] result." AS 11.81.900(a)(1). This definition is in "[a]ccord" with the ABA Standards' definition of intent. *Buckalew*, 731 P.2d at 53 n. 18. Therefore, Schuler's conviction is conclusive proof that he acted with intent as defined by the ABA Standards.[6]

### 3. *Injury or potential injury*

The ABA Standards define "injury" and "potential injury" as follows:

> "Injury" is harm to a client, the public, the legal system, or the profession which results from a lawyer's misconduct. The level of injury can range from "serious" injury to "little or no" injury; a reference to "injury" alone indicates any level of injury greater than "little or no" injury.
>
> ….
>
> "Potential injury" is the harm to a client, the public, the legal system or the profession that is reasonably foreseeable at the time of the lawyer's misconduct, and which, but for some intervening factor or event, would probably have resulted from the lawyer's misconduct.

ABA Standards, Definitions, ABA/BNA at 01:807.

To measure the injury, the standards require consideration of the type of duty violated. *Id.* at 01:806. As previously indicated, the duty here was one owed to the public. In light of Schuler's position as District Attorney, his commission of a crime undoubtedly undermined confidence in the legal profession. The public most certainly expects obedience to the law by those with authority to prosecute others for its violation. It undermines the foundations of our criminal justice system to uncover a public servant violating the very statutes he is entrusted with enforcing. By committing a crime, Schuler violated his oath of office as District Attorney for the State of Alaska, and weakened the moral authority of the state to condemn other violations of the criminal law. We therefore conclude that Schuler's misdemeanor theft caused "serious" injury under the relevant ABA Standards.

### B. Step Two: Initial Determination of Appropriate Sanction.

■ In our initial reference of this matter to the Bar for disciplinary proceedings, we stated that Schuler's misconduct "appears to be a serious crime under the Model Standards, Standard 5.11(a), for which disbarment is generally appropriate." *In*

---

**4.** ABA Standards, Theoretical Framework, ABA/BNA at 01:806 reads in part:

> The most culpable mental state is that of intent, when the lawyer acts with the conscious objective or purpose to accomplish a particular result. The next most culpable mental state is that of knowledge, when the lawyer acts with conscious awareness of the nature or attendant circumstances of his or her conduct both without the conscious objective or purpose to accomplish a particular result. The least culpable mental state is negligence, when a lawyer fails to be aware of a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a

reasonable lawyer would exercise in the situation.

**5.** To hold otherwise would allow an attorney to relitigate his or her innocence in a disciplinary proceeding. *See In re Kirschke*, 16 Cal.3d 902, 129 Cal.Rptr. 780, 549 P.2d 548, 549 (1976). This is implicitly precluded by Alaska Bar Rule 26(f), which provides that in a proceeding following interim suspension for a serious crime "[t]he *sole issue* to be determined by the Hearing Committee will be the extent of the final discipline to be imposed." (Emphasis added).

**6.** Furthermore, by Schuler's own admission, he concealed the tapes in his day-pack "intend[ing] to leave the store without paying for them."

*the Disciplinary Matter Involving Bryan E. Schuler,* No. S–3263 (July 12, 1989). Bar Counsel, however, maintains that Standard 5.11(b) controls, and contends that suspension rather than disbarment is the appropriate sanction for misdemeanor theft. Standard 5.11 provides as follows:

Disbarment is generally appropriate when:

(a) a lawyer engages in serious criminal conduct a necessary element of which includes intentional interference with the administration of justice, false swearing, misrepresentation, fraud, extortion, misappropriation, or theft; or the sale, distribution or importation of controlled substances; or the intentional killing of another; or an attempt or conspiracy or solicitation of another to commit any of these offenses; or

(b) a lawyer engages in any other intentional conduct involving dishonesty, fraud, deceit, or misrepresentation that seriously adversely reflects on the lawyer's fitness to practice.

ABA/BNA at 01:829.

It makes no difference to this case whether Schuler's misconduct is deemed to be "serious criminal conduct a necessary element of which includes ... misappropriation, or theft" under subsection (a), or "any other intentional conduct involving dishonesty ... that seriously adversely reflects on [his] fitness to practice" under subsection (b). Under either subsection,

Standard 5.11 states that "[d]isbarment is generally appropriate." *Id.*

It is worthy of note that the commentary to Standard 5.11 suggests that the authors' research focused on felony convictions. The commentary states that "most courts impose disbarment on lawyers who are convicted of serious felonies." ABA/BNA at 01:829. Bar Counsel argues that disbarment is an excessive sanction for misdemeanor theft when compared to this court's rulings in other disciplinary cases involving criminal convictions.[7] It is also worthy of note that Schuler's conduct did not take place in connection with his official duties as District Attorney, or in connection with services performed in the practice of law.

Nevertheless, on the basis of the undisputed facts, we conclude that the sanction of disbarment is the reference point from which we begin our analysis of aggravating and mitigating factors. In so concluding, we note not only Schuler's misdemeanor conviction while a member of the Bar, but also his misdemeanor shoplifting conviction prior to his admission to the Bar.[8]

C. Step Three: Aggravating and Mitigating Factors.

■ "[A]fter making the initial determination as to the appropriate sanction, the court [should] then consider any relevant *aggravating or mitigating factors.*" (Em-

7. The following is a partial summary of pre-*Buckalew* cases relied on by Bar Counsel: *In re Kernan,* No. S–1390 (June 9, 1986) (disbarment for sale of marijuana, a felony); *In re Pittman,* Nos. S–929/1076 (December 19, 1985) (disbarment for assault in the third degree on a police officer, a felony); *In re Preston,* 616 P.2d 1 (Alaska 1980) (two-year suspension for conviction of distributing cocaine to a minor, a felony); *In re Webb,* 602 P.2d 408 (Alaska 1979) (disbarment for conviction of accessory after the fact to murder, a felony); *In re Robson,* 575 P.2d 771, 782 (Alaska 1978) (one-year suspension for aiding and abetting receipt of ammunition by a convicted felon, a felony, and for violation of order temporarily suspending attorney from practice); *Alaska Bar Ass'n v. Benton,* 431 P.2d 146 (Alaska 1967) (disbarment for conviction of grand larceny, a felony).

8. On September 6, 1973, Schuler was charged with petty larceny, a violation of former AS 11.20.140, the complaint alleging that he did "unlawfully take, steal and carry away, with intent to permanently deprive the owner thereof, ... one (1) Canon Camera Case, ...." On September 10 he pleaded no contest to the charge and was fined $50. He was then nineteen years old.

This offense was disclosed by Schuler on his application for admission to the Alaska Bar Association and on his application for a superior court judgeship that became vacant in Bethel in 1986, shortly before the incident discussed herein took place. Schuler was one of three applicants, out of five who applied for the judgeship, found qualified for the position by the Alaska Judicial Council.

phasis added); ABA Standards, Theoretical Framework, ABA/BNA at 01:807.[9]

Bar Counsel argues that none of the aggravating factors are present in Schuler's case. However, Bar Counsel believes that the following mitigating factors are present: § 9.32(a) absence of prior disciplinary record;[10] (c) personal or emotional problems;[11] (j) interim rehabilitation;[12] (k) imposition of other penalties or sanctions;[13]

9. Aggravating factors "may justify an increase in the degree of discipline to be imposed," and include:

(a) prior disciplinary offenses;
(b) dishonest or selfish motive;
(c) a pattern of misconduct;
(d) multiple offenses;
(e) bad faith obstruction of the disciplinary proceeding by intentionally failing to comply with rules or orders of the disciplinary agency;
(f) submission of false evidence, false statements, or other deceptive practices during the disciplinary process;
(g) refusal to acknowledge wrongful nature or conduct;
(h) vulnerability of victim;
(i) substantial experience in the practice of law;
(j) indifference to making restitution.

ABA Standards, §§ 9.21-.22, ABA/BNA at 01:841-42. Mitigating factors "may justify a reduction in the degree of discipline to be imposed," and include:

(a) absence of a prior disciplinary record;
(b) absence of a dishonest or selfish motive;
(c) personal or emotional problems;
(d) timely good faith effort to make restitution or to rectify consequences of misconduct;
(e) full and free disclosure to disciplinary board or cooperative attitude toward proceedings;
(f) inexperience in the practice of law;
(g) character or reputation;
(h) physical or mental disability or impairment;
(i) delay in disciplinary proceedings;
(j) interim rehabilitation;
(k) imposition of other penalties or sanctions;
(*l*) remorse;
(m) remoteness of prior offenses.

ABA Standards, §§ 9.31-.32, ABA/BNA at 01:842.

10. The disciplinary records of the Alaska Bar Association reflect that previously two grievances were filed against Schuler. One was dismissed and one was not accepted for investigation. No prior discipline has been imposed against him.

11. In his statement to the Disciplinary Board, Mr. Schuler says, *inter alia:*

2. I was accosted by one of the store employees and directed not to return to the store. I left and returned home, awaiting the next inevitable step in the process. When requested to come to the police station I sought the advice of my attorney and declined to make a statement to the police at that time.

3. Soon thereafter, I was suspended by the State in my job as a prosecutor. I went to Anchorage where I sought treatment from a psychiatrist, Dr. Michael Bernzott. Treatment by Dr. Bernzott helped me to realize not only the wrongfulness of my conduct, of which I was already aware, but also the sources of my motivation to such an act which, compared to my standing and reputation in the community, seemed so unreasonable. I came to understand that I was creating intolerable strain for myself in posing as perfect while suppressing acceptance of my own normal weakness. This eventually manifested itself in acts, such as this attempted theft, which can only be understood as self-destructive. Stealing was a way to put myself in the way of punishment for my pose. Once I understood the roots of this way of thinking, I was able to come to terms with things that I had a choice to do or not to do. One of the things I became truly free not to do was steal.

3. [sic] Nonetheless, I had put myself in the way of punishment, and punishment was awarded. I entered a plea of No Contest to the charge of Concealment of Merchandise, and consequently was terminated by the Department of Law, ending a budding career to which I had totally devoted myself under trying conditions for over five years. That was not unexpected, but was still very painful indeed.

4. I also felt acutely the shame associated not only with the punishment, but also the knowledge of my colleagues of my wrongful act. This was especially ash in my mouth because I had recently put myself before the Bar as a candidate for judicial office and had attained the highest ratings for professional integrity by my peers.

6. I acknowledge the wrongfulness of my conduct and recognize that bitter consequences flow from it. I know now why I acted as I did and, armed with that knowledge, know that I will not so act again. I cannot make the events other than as they are, but I also know that I can, in time, demonstrate to the Bar and the judiciary that the credit I was once given for integrity can be regained, if given the chance.

12. *See* footnote 11.

13. On Schuler's plea of no contest to a violation of AS 11.46.220(a), (c)(2), he was found guilty. Imposition of sentence was suspended and Schuler was placed on probation for a period of one and one half years on good behavior, ordered to continue counselling as long as neces-

and (1) remorse.[14]

We agree with Bar Counsel's analysis.[15] Other than the two footnoted grievances filed but found wanting, Schuler has no prior disciplinary record. His misconduct in regard to the present case would appear to be the product of a self-destructive motivation, rather than a theft for personal gain. We further note that Schuler has successfully completed the terms of his probation, has lost his job as District Attorney, and has demonstrated remorse for what he did.

It is instructive to compare the facts in our most recent disciplinary case, *Disciplinary Matter Involving West*, 805 P.2d 351 (Alaska 1991), with the facts of Schuler's conduct. *West* involved the discipline of an attorney who had fraudulently notarized a signature which purported to be that of his deceased client when in fact the signature was forged by his deceased client's widow. The signature was made and notarized at the attorney's suggestion to facilitate collection of a settlement purportedly agreed upon by the client and the state, which had not been apprised of the client's death. The misconduct occurred in connection with services performed by West in the practice of law, for which he received a contingent fee. Based on a conclusion that West violated ABA Model Standards 5.11 and 5.12, we affirmed the Disciplinary Board's "determination that disbarment or suspension are generally appropriate sanctions given the nature of West's misconduct." *West*, 805 P.2d at 357–58.

We then considered aggravating and mitigating factors. West's case, unlike Schuler's, involved several aggravating circumstances, one of which we considered "significant." *Id.* at 358. It also involved mitigating factors, including personal and emotional problems suffered by West and testimony as to West's good character and reputation. Notably absent from West's case, however, was any remorse, any effort to rectify the consequences of his misconduct, or the imposition of any other penalties or sanctions. Nevertheless, we rejected the recommendation of the Board in that case that West be suspended for two years and imposed only a ninety day suspension on West, though not without dissent.[16] *Id.* at 360.

When we announced in *Buckalew* that we would be guided by the ABA Standards for disciplining lawyers, we noted that in part those standards are explicitly designed to promote "consistency in the imposition of disciplinary sanctions for the same or similar offenses." *Buckalew*, 731 P.2d at 52 (quoting ABA Standards, Section 1.3, ABA/BNA at 01:809–10). While Schuler's misconduct may be viewed as more serious than West's, in that it did cause serious injury as defined by the ABA Standards, the mitigating factors present in Schuler's case are more numerous and more significant than those present in West's case. Based upon a consideration of all the above factors, we conclude that a sanction of not more than two years suspension and passage of the MPRE, as recommended by the Board, should be imposed on Schuler.

## III. CONCLUSION

Schuler's misdemeanor theft constitutes a violation of disciplinary rules prohibiting illegal conduct involving moral turpitude, and conduct involving dishonesty. Compliance with these rules is a duty that all attorneys owe to the public.

Schuler acted with criminal intent, the most culpable mental state according to the ABA Standards. Because Schuler's mis-

---

sary, complete 100 hours of community service work within one and one half years and provide proof thereof to the court, and not violate the law. He successfully completed the terms of his probation and the case against him dismissed.

14. *See* footnote 11.

15. Arguably the remoteness of Schuler's prior offense could be a mitigating factor under the guidelines. The Board did not so argue. How-

ever, the Board did consider the prior offense in determining whether to modify its Revised Stipulation for Discipline. It declined to do so "[b]ecause the 1973 conviction predates [Schuler's] admission to the Bar and is relatively dated."

16. Justices Burke and Compton would have ordered West disbarred.

conduct directly and seriously demonstrated an unfitness to practice law, he caused "serious" injury or potential injury to public confidence as described in ABA definitions.

Having considered the fact that Schuler's underlying misconduct involves his second conviction of intentional theft, and that his conduct as a member of the bar violated ABA Standard 5.11, we might ordinarily find disbarment to be the proper sanction. However, given the relevant mitigating factors in this record, we conclude that a significant period of suspension from the practice of law is indicated. We therefore hold that the stipulated and recommended sanction should be approved.[17]

The Revised Stipulation for Discipline is APPROVED.

RABINOWITZ, Chief Justice, dissenting.

My difference with the majority's opinion and the Board's revised recommendation is that I would commence Schuler's two-year suspension from the date of the issuance of this opinion, rather than from January 13, 1988 (the date of this court's interim suspension of Schuler from the practice of law).

Schuler's misdemeanor theft conviction constitutes a violation of disciplinary rules which prohibit illegal conduct involving moral turpitude and dishonesty. Compliance with these disciplinary rules is a duty that all attorneys owe to the public.

Here Schuler acted with criminal intent, the most culpable mental state according to the ABA Standards. Schuler's misconduct clearly demonstrates an unfitness to practice law and causes serious injury to the public's confidence in the legal profession.

Given the relevant facts in this record, I conclude that disbarment is an inappropriate sanction. Nevertheless, I believe that a significant suspension from the practice of law is indicated. In view of the fact that Schuler's underlying misconduct involves his second conviction of intentional theft, I would hold that the stipulated sanction should be accepted with the exception that Schuler's two-year period of suspension from the practice of law should run from the publication date of this opinion.

MATTHEWS, Justice, dissenting.

Section 5.11 of the American Bar Association Standards for Imposing Lawyer Sanctions (1986) indicates that disbarment is generally appropriate in cases where a lawyer commits an intentional theft. Since this is Schuler's second intentional theft, I view his case as somewhat aggravated. Thus, I would follow the ABA standards and order Schuler disbarred.

17. The Revised Stipulation for Discipline was approved by an order entered by the court on April 1, 1991, with "A written opinion [to] follow." The practical effect of our approval is that Mr. Schuler will have been suspended in excess of three years and two months. Were Justice Rabinowitz's position to have prevailed, the suspension would be in excess of five years and eight months.