In the Disciplinary Matter Involving
Geoffrey J. McGRATH.

No. S–14382.

Supreme Court of Alaska.

July 29, 2011.

ABA Membership No. 9611068.
ABA File No. 2007D056 and 2007D093.

Before: CARPENETI, Chief Justice, and
FABE, WINFREE CHRISTEN and
STOWERS, Justices.

### Order

Bar Counsel for the Alaska Bar Association opened two grievance files in 2007 regarding attorney Geoffrey J. McGrath. In April 2011 McGrath and Bar Counsel stipulated to a resolution of the grievances without a formal hearing; the stipulation details the factual underpinnings of McGrath's ethical violations and provides for a three-year suspension from the practice of law and a number of conditions for reinstatement. In May 2011 the Disciplinary Board of the Alaska Bar Association approved the stipulation and agreed to recommend its adoption by this court. The stipulation was presented for our consideration on July 8, 2011. Having independently reviewed the stipulated facts and, taking into account the American Bar Association Standards for Imposing Lawyer Sanctions, considered the appropriate level of discipline,

IT IS ORDERED:

That the stipulation, attached as an appendix, is approved, and that McGrath is suspended from the practice of law for three years effective September 15, 2011. McGrath's reinstatement is conditioned on meeting the requirements set out in the stipulation.

Entered at the direction of the court.

### STIPULATION FOR DISCIPLINE BY CONSENT PURSUANT TO ALASKA BAR RULE 22(h)

Pursuant to Alaska Bar Rule 22(h), Geoffrey J. McGrath, Respondent, and Louise R. Driscoll, Assistant Bar Counsel, stipulate as follows:

### JURISDICTION AND VENUE

1. Geoffrey J. McGrath, is and was at all times pertinent a member of the Alaska Bar Association, admitted to practice law by the Supreme Court of Alaska.

2. Mr. McGrath is and was at all times pertinent subject to the Alaska Rules of Professional Conduct (ARPCs) and to the Alaska Bar Rules, Part II (Rules of Disciplinary Enforcement), giving the committee jurisdiction to hear this matter.

3. The events on which the petition is based occurred in the Third Judicial District, Alaska.

### BACKGROUND FACTS

#### ABA v. McGrath, ABA File No.2007D056

4. Mr. McGrath represented L.C. on a Workers' Compensation claim against Alaska Regional Hospital. Attorney Tasha Porcello represented the hospital.

5. Following negotiations between the parties, Ms. Porcello prepared and sent Mr. McGrath by e-mail a proposed Compromise and Release on December 18, 2006. Under the agreement the employer would pay $5,000 in attorney fees. Mr. McGrath failed to obtain promptly his client's signature after the Compromise and Release was sent to him. Mr. McGrath explained that he was changing residences in Florida on an expedited basis due to a personal matter in January, 2007. Mr. McGrath did not respond to Ms. Porcello's numerous attempts to reach him beginning in early January, 2007.

6. On January 25, 2007, Ms. C. told a Workers' Compensation Technician with the Division of Workers' Compensation, that Ms. C. was unable to reach Mr. McGrath. Although Mr. McGrath attended some hearings and negotiations were completed, the technician stated that no entry of appearance had been filed.

7. On February 12, 2007, the Workers' Compensation Board held a prehearing conference that Mr. McGrath did not attend in

person or telephonically even though he had been notified. After listening to testimony, the Board requested Ms. C. to produce evidence of any attorney fees that she paid Mr. McGrath because attorney fees paid directly to a lawyer by an employee would not comply with Alaska Workers' Compensation statutes and regulations.

8. Following the prehearing conference, Ms. C. produced evidence that she wrote Mr. McGrath a $500 check for an initial consultation and file review on September 29, 2005, which Mr. McGrath cashed on or before October 3, 2005, and that she disbursed a cashier's check to Mr. McGrath in the amount of $7,000 on December 6, 2006.

9. The Board scheduled an April 19, 2007, hearing to approve or reject the Compromise and Release that Ms. C. and Mr. McGrath signed on March 5, 2007.

10. Ms. C. and attorney Tasha Porcello attended the April 19, 2007, hearing in person. Mr. McGrath attended telephonically from Florida. Mr. McGrath stated he was attempting to return to his residence and files, and further stated he was in his car without his files available, stuck in traffic, waiting for an elevated drawbridge to lower.

11. The Board discussed whether AS 23.30.145 allowed Mr. McGrath to collect more in attorney fees ($7,000) than the employer would pay ($5,000) under the proposed Compromise and Release Agreement. Mr. McGrath admitted subsequently that he was not aware of the statutory limitation and that he could not charge that fee.

12. After discussion and agreement between the parties and the Board, the Board modified the terms of the Compromise and Release Agreement to order payment of $5,000 directly to Ms. C., the employee, rather than to her attorney, Mr. McGrath. The Board directed Mr. McGrath to reimburse $2,000 in unapproved fees to Ms. C. within 30 days.

13. On April 20, 2007, the Board wrote the parties, summarizing the agreement reached at the hearing. The Board ordered Mr. McGrath to pay Ms. C. $2,000.00 within 30 days of the hearing. The Board directed Ms. C. to report after she received the $2,000 check and the bank honored it.

14. The Board mailed its April 20, 2007, order to Mr. McGrath at his two addresses of record—an Anchorage residential address and an Anchorage office address. Mr. McGrath stated that he was in Florida and never received the written order, but further stated that he is aware that he was responsible for maintaining a mailing address where mail would be reviewed and has not denied that the Order was sent to the Anchorage address.

15. After being advised to do so, Ms. C. filed a Petition for Order of Default on July 6, 2007, because Mr. McGrath did not reimburse her $2,000 in attorney fees within 30 days as ordered by the Board.

16. On August 10, 2007, bar counsel wrote Mr. McGrath asking him about his failure to reimburse Ms. C. the $2,000 in fees. On September 1, 2007, Mr. McGrath explained that during a hearing recess he and Ms. C. simply agreed that he would refund the $2,000 upon his return to Anchorage which had not occurred to date and that he understood that he was under an obligation to arrange for the return of the portion of the fee, but he stated he was not under the impression the fee was to be returned within 30 days of the hearing. On August 31, 2007, although he was still in Florida, he arranged for personal delivery of a cashier's check in the amount of $2,000 to Ms. C.

## ALLEGATIONS OF MISCONDUCT

### Count One

### Competency

### (ARPC 1.1)

17. Alaska Rule of Professional Conduct 1.1(a) states in part:

(a) A lawyer shall provide competent representation to a client. Competent representation requires the legal knowledge, skill, thoroughness and preparation reasonably necessary for the representation.

18. Mr. McGrath violated Rule 1.1(a) by failing to file an entry of appearance, failing to be aware of statutes and regulations that govern Workers' Compensation proceedings, failing to attend hearings, failing to be prepared for hearings that he attended, and failing to follow Board orders.

## Count Two

### Failure to Communicate

### (ARPC 1.4)

19. Alaska Rule of Professional Conduct 1.4 states in part that a lawyer "shall keep a client reasonably informed about the status of a matter undertaken on the client's behalf and promptly comply with reasonable requests for information."

20. Mr. McGrath violated Rule 1.4 by not returning his client's calls and by not giving her information that she needed to resolve her claims efficiently and without paying excessive fees.

## Count Three

### Fees

### (ARPC 1.5)

21. Alaska Rule of Professional Conduct 1.5 states in part that a lawyer "shall not make an agreement for, charge, or collect an unreasonable fee or an unreasonable amount for expenses."

22. Mr. McGrath breached Rule 1.5 when he collected $7,000 in attorney fees from Ms. C. and later agreed with the employer to settle for $5,000 in attorney fees. The $7,000 fee was unreasonable and in violation of AS 23.30.145.

## Count Four

### Fairness to Opposing Party and Counsel

### ARPC 3.4(c)

23. Rule 3.4(c) mandates that a lawyer "not knowingly violate or disobey an order of a tribunal or an obligation under the rules of a tribunal, except for an open refusal based on an assertion that the order is invalid or that no valid obligation exists."

24. Mr. McGrath violated Rule 3.4(c) when he made an agreement with his client to refund the $2,000 that he owed her whenever he returned to Alaska, rather than in the 30 days that the Board ordered at hearing and in its April 20, 2007 letter to the parties and their counsel.

### B. v. McGrath, ABA File No. 2007D093

25. Complainant K.B. hired Geoffrey McGrath to handle B.'s insurance claim after a low speed July 2006 auto accident. Mr. B. and Mr. McGrath were social acquaintances prior to this representation.

26. Mr. McGrath began negotiating with Safeco and initially kept Mr. B. informed. Mr. B. was contemporaneously moving from Anchorage to Portland, Oregon for school. Mr. McGrath stated that Mr. B. did not have forwarding contact information for Oregon, but informed Mr. McGrath that he would have a friend contact Mr. McGrath when he did. Approximately two days before Mr. B. relocated to Portland to attend school, Mr. McGrath told him he believed that settlement was close. Mr. McGrath moved to Florida in October 2006. After moving to Portland, Mr. B. did not immediately contact nor hear from Mr. McGrath. When Mr. B. tried to contact Mr. McGrath to ask about the status of his claim he was unsuccessful in reaching Mr. McGrath.

27. On May 17, 2007, Mr. B. contacted Safeco directly. The Safeco adjustor told Mr. B. that Safeco cut a $12,743 check on or around October 11, 2006, and that it had been cashed on or around October 18, 2006. The check had been issued to Geoffrey McGrath, attorney, in trust for K.B. Mr. B. had received neither notice nor any money after the check was cashed in October.

28. Mr. B. tried again to contact Mr. McGrath. He received a voicemail message from Mr. McGrath and eventually spoke with Mr. McGrath in response to one message left that same day with Mr. McGrath's significant other, but Mr. McGrath did not respond to

prior e-mail and cell phone messages from Mr. B. Mr. McGrath stated the reason for the lack of prior response was that he had discontinued service with ACS (carrier for his work telephone number, personal cell phone number and work email address) in November 2006 after a dispute with the company following his move to Florida.

29. Mr. B. asserts that he did not authorize Mr. McGrath to settle the case in October 2006 before Safeco sent Mr. McGrath a release of claims. Mr. McGrath asserted that he believed that Mr. B. did authorize Mr. McGrath to settle the case before Mr. B. moved to Oregon. Mr. McGrath asserted that Mr. B. indicated to him that Mr. B. stated he world settle for an amount that allowed Mr. B. to net $2,000, after payment of fees and medical expenses. Mr. McGrath did not notify Mr. B. of the settlement nor did he obtain Mr. B.'s signature on the release before Mr. McGrath cashed the check.

30. Mr. B. had earlier directed Mr. McGrath to pay medical bills with any settlement funds he obtained. Mr. McGrath asserted that prior to Mr. B.'s call, he believed that he had paid the accident-related medical bills. Mr. McGrath stated that he told Mr. B. what he would look into the matter and that his files were in storage in Anchorage. Mr. B. filed his Bar complaint approximately 2 to 3 weeks later, before Mr. McGrath provided a response to Mr. B. Mr. McGrath admits he did not respond to Mr. B.'s inquiry in a timely manner.

31. Mr. McGrath asserted that after the phone conversation, he contacted Mr. B.'s medical providers that he could recall from his memory to determine what amounts, if any, were owed. Mr. McGrath stated that only the chiropractic provider disclosed the payment information, and that the other providers would not disclose information, citing HIPPA restrictions. Mr. McGrath paid the chiropractor's bill of $1,260, but did not pay other outstanding doctor bills. When Mr. B. requested his credit report, he learned that he owed Doctor's Collection Agency $1,023, RPN Collection Agency $1,014.26, and Cornerstone Collection Agency $695 for accident-related medical bills that Mr. B. intended to pay from settlement proceeds.

32. Mr. McGrath stated that because he heard nothing further on the matter, he assumed that the payment of the chiropractic bill resolved the outstanding amount. Mr. McGrath admits that he did not look further into the matter and further admits he was not properly focused on his practice at that time. However, the matter was not resolved, and in December 2008, Mr. B. applied for reimbursement from the Lawyers' Fund For Client Protection (LFCP) complaining that he lost $12,743 in money based on alleged dishonest conduct by Mr. McGrath. On April 3, 2009, after Mr. McGrath raised the issues, Mr. B. amended his application to request $9,483, a deduction that reflected the $1,260 payment Mr. McGrath made to the chiropractor and the $2,000 that Mr. McGrath earlier advanced to Mr. B. for living expenses.

33. On May 3, 2009, after review of Mr. McGrath's file materials sent from Anchorage and evidence provided by Mr. B., Mr. McGrath, by agreement, paid Mr. B. the full amount of the amended claim in the LFCP matter. In light of the payment, the matter was closed prior to the LFCP committee deliberating and issuing its findings of fact, its statement of conclusions and its recommendations to the Board of Governors.

34. Responding to Mr. B.'s complaint, Mr. McGrath wrote that he gave $2,000 to Mr. B. in advance of the settlement because of their prior social relationship and because Mr. B. approached Mr. McGrath twice for a loan based upon his financial circumstances.

35. Mr. McGrath admits he was negligent in the handling of Mr. B.'s settlement matter, but further stated he was overwhelmed at the time and that several factors in 2006 and 2007 affected his concentration, focus and communication, including a death in his family, a diagnosis of cancer in his family, an emergency surgery in his family, a custody dispute and parenting commitments to his daughters in Alaska from a previous marriage, new parenting commitments in Florida

with a significant other who ended their relationship, traveling between Alaska and the East Coast, obtaining a new telephone number and e-mail address, moving his office, moving twice in Florida, and other work commitments in Alaska and Florida.

36. To further explain why Mr. McGrath was unaware that Mr. B. had tried to reach him, Mr. McGrath stated that his Hotmail account deleted his e-mails because he had not used that account for a period of 60 days while he was attending to his personal issues.

### Count Five

### *Communication*

### (ARPC 1.4)

37. Mr. McGrath violated ARPC 1.4 by failing to keep Mr. B. informed regarding the status of his matters and by failing to return calls when his client tried to reach him. He also violated Rule 1.4 by not telling Mr. B. of the proposed settlement and by failing to get his client's consent to the settlement.

### Count Six

### Conflict of Interest:  Current Specific Rules

### (ARPC 1.8(e))

38. Alaska Rule of Professional Conduct 1.8(e) provides that a lawyer shall not provide financial assistance in connection with litigation or contemplated litigation except in limited circumstances.

39. Mr. McGrath violated 1.8(e) when he advanced $2,000 in financial assistance to Mr. B. in anticipation of being reimbursed from settlement proceeds when paid.

### Count Seven

### *Safekeeping Property*

### (ARPC 1.15(d))

40. ARPC 1.15(d) states in part that after receiving funds in which a client or third person has an interest, a lawyer shall promptly notify the client or the third person.  The rule continues,

> ... a lawyer shall promptly deliver to the client or third person any funds or other property that the client or third person is entitled to receive and, upon request by the client or third person, shall promptly render a full accounting regarding the funds or property.

41. Mr. McGrath violated Rule 1.15(d) by failing to distribute money to medical providers after cashing the settlement check, by failing to distribute money to Mr. B., and by failing to account to Mr. B. for the settlement funds Mr. McGrath received from Safeco.

### Count Eight

### *Truthfulness in Statements to Others*

### (ARPC 4.1)

42. Alaska Rule of Professional Conduct 4.1(a) provides that a lawyer not knowingly make a false statement of material fact to a third person in the course of representing a client.

43. Mr. McGrath breached Rule 4.1(a) when he negotiated a settlement with Safeco that was premised on his client's approval, and accepted and cashed a check tendered in trust for his client, K.B., while knowing that Mr. B. was unaware of the settlement and unaware of his obligation to sign Safeco's Release of All Claims in return for the settlement payment of $12,743.05.

### SANCTION ANALYSIS

44. The appropriate sanction for Mr. McGrath's misconduct is determined by reference to the American Bar Association Standards for Imposing Lawyer Sanctions (1986, amended 1992) (ABA Standards), adopted in *In re Buckalew*, 731 P.2d 48 (Alaska 1986).  Under ABA Standard § 3.0, the following factors are to be considered in imposing sanctions after a finding of lawyer misconduct:

  (a) the duty violated;

  (b) the lawyer's mental state;

  (c) the actual or potential injury caused by the lawyer's misconduct; and

(d) the existence of aggravating or mitigating factors.

45. These factors are addressed in a three-part methodology: (1) determine the first three factors; (2) determine the recommended sanction; and (3) determine the applicability of aggravating or mitigating factors. *In re Schuler*, 818 P.2d 138, 140 (Alaska 1991).

## Part I: Duty Violated; Lawyer's Mental State; Actual or Potential Injury

### A. Duty Violated

46. Mr. McGrath's violation of ARPC 1.1, ARPC 1.4, ARPC 1.5, ARPC 1.8 and ARPC 1.15 breached duties to clients. *See* ABA Standards §§ 4.0, 4.1, 4.3, 4.4, 4.5, and 4.6. Mr. McGrath's violation of ARPC 3.4 and 4.1 breached duties owed to the legal system.

### B. Lawyer's Mental State

47. Under the ABA Standards § III Definitions:

"Negligence" is the failure of a lawyer to heed a substantial risk that circumstances exist or that a result will follow, which failure is a deviation from the standard of care that a reasonable lawyer would exercise in the situation.

"Knowledge" is the conscious awareness of the nature or attendant circumstances of the conduct but without the conscious objective or purpose to accomplish a particular result.

"Intent" is the conscious objective or purpose to accomplish a particular result.

48. As shown by the facts above, Mr. McGrath acted negligently or with gross negligence when he failed to provide competent representation in a workers' compensation proceeding, ignored clients' efforts to contact him, impeded communication by providing addresses of a house where he no longer lived and an office where he no longer worked, collected unreasonable fees, settled a claim without client authority, and failed to recognize that providing financial support to his client created a conflict of interest. He knowingly failed to pay medical providers in accordance with his client's directive, failed to account promptly to clients for client money, ignored the Workers' Compensation Board's order to reimburse attorney fees to his client within 30 days, and delayed reimbursing his client the settlement money that he kept after cashing the settlement check.

### C. Actual or Potential Injury

49. Mr. McGrath caused actual or potential harm to his clients through delay, expense, anxiety, possible loss of legal rights, or other impairment of their interests. Mr. McGrath caused actual or potential harm to the legal system by failing to abide by the legal rules of substance and procedure which affect the administration of justice.

## Part 2: Recommended Sanction Under ABA Standards

50. ABA Standards § 4.5 sets out sanctions for failure to provide competent representation to a client:

4.53 Reprimand is generally appropriate when a lawyer:

(a) demonstrates failure to understand relevant legal doctrines or procedures and causes injury or potential injury to a client; or

(b) is negligent in determining whether he or she is competent to handle a legal matter and causes injury or potential injury to a client.

51. ABA Standards § 4.4 sets out the sanctions for breach of a lawyer's duty of diligence, including a lawyer's duty to contact his clients and return their calls:

4.42 Suspension is generally appropriate when:

(a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client; or

(b) a lawyer engages in a pattern of neglect and causes injury or potential injury to a client.

4.43 Reprimand is generally appropriate when a lawyer is negligent and does not act with reasonable diligence in rep-

resenting a client, and causes injury or potential injury to a client.

52. ABA Standards § 4.6 sets out the sanctions for breach of a lawyer's duty to provide accurate information to support the fee the lawyer collects for the services performed.

4.62 Suspension is generally appropriate when a lawyer knowingly deceives a client, and causes injury or potential injury to the client.

4.63 Reprimand is generally appropriate when a lawyer negligently fails to provide a client with accurate or complete information, and causes injury or potential injury to the client.

53. ABA Standards § 4.3 sets out the sanctions for breach of a lawyer's duty to avoid conflicts of interest:

4.33 Reprimand is generally appropriate when a lawyer is negligent in determining whether the representation of a client may be materially affected by the lawyer's own interests, or whether the representation will adversely affect another client, and causes injury or potential injury to a client.

54. ABA Standards § 4.1 sets out the sanctions for breach of a lawyer's duty to preserve a client's property:

4.11 Disbarment is generally appropriate when a lawyer knowingly converts client property and causes injury or potential injury to a client.

4.12 Suspension is generally appropriate when a lawyer knows or should know that he is dealing improperly with client property and causes injury or potential injury to a client.

55. ABA Standards § 6.0 addresses violations of duties owed to the legal system by a lawyer who is not truthful in his statements to others.

56. Section 6.12 recommends suspension when a lawyer knows that material information is improperly being withheld, and takes no remedial action, and "causes injury or potential injury to a party to the legal pro-

ceedings, or causes an adverse or potentially adverse effect on the legal proceeding."

57. Under Section 6.13 a reprimand is:
Generally appropriate when a lawyer is negligent either in determining whether statements or documents are false or in taking remedial action when material information is being withheld, and causes injury or potential injury to a party to the legal proceeding, or causes an adverse or potentially adverse effect on the legal proceeding.

58. ABA Standard § 6.2 addresses the appropriate discipline when a lawyer abuses the legal process by failing to obey an obligation under the rules of a tribunal.

59. Section 6.22 suspension is appropriate "when a lawyer knows that he is violating a court order or rule, and there is injury or potential injury to a client or party or interference or potential interference with a legal proceeding."

### Aggravating and Mitigating Factors

60. Aggravating factors include: dishonest or selfish motive, § 9.22(b); multiple offenses, § 9.22(d)(competency; failure to communicate; unreasonable fees; conflict of interest; failure to safe keep client money; failure to obey orders of the tribunal; lack of truthfulness in statements to others); and, indifference to making restitution, § 9.22(j).

61. The following factor can be considered in mitigation: personal or emotional problems, § 9.32(c). Mr. McGrath stated he was likely clinically depressed in the relevant time period of 2006 and 2007 based upon numerous, significant, simultaneous and unusual factors, including the ending of a four-year relationship with his significant other after their joint relocation to Florida; his ex-wife seeking to modify custody; his grandfather's death; his father's cancer diagnosis and subsequent treatment; and, the reconciliation and subsequent difficult pregnancy of his significant other. Mr. McGrath did not seek medical attention from a licensed health care provider.

## ALASKA CASES

*Neglect and failure to communicate*

62. In resolving the charges against Mr. McGrath, the Alaska Supreme Court may consider the following reported decisions dealing with attorney neglect: *In re Brion*, 212 P.3d 748 (Alaska 2009)(suspension for three years, two stayed, with conditions of reinstatement and practice for pattern neglect); *In re Cyrus*, 241 P.3d 890 (Alaska 2010); *In re Triem*, 929 P.2d 634 (Alaska 1996) (90–day suspension and probation for single instance of neglect that occurred during probation for previous neglect); *In re Morrill*, 904 P.2d 395 (Alaska 1995) (suspension for five years less one day for pattern neglect and deception of court); *In re Simpson*, 645 P.2d 1223 (Alaska 1982) (public censure for gross negligence by providing incorrect interrogatory response); *In re Collins*, 583 P.2d 207 (Alaska 1978) (public censure for failure to close seven cases within reasonable time); *Alaska Bar Association v. Martin*, 537 P.2d 516 (Alaska 1975) (five year suspension for neglect and conversion of client funds); *In re McNabb*, 395 P.2d 847 (Alaska 1964) (180 day suspension for neglect and deception of client).

63. The Supreme Court may also consider the following unreported cases involving lawyer neglect and failure to communicate: *In re Simpson*, Supreme Court No. S–12952 (order of Feb. 5, 2008) (for neglect of seven clients, abandonment of practice, failure to communicate, and failure to respond to discipline charges: one-year suspension with 120 days to serve and 245 days stayed, conditions of reinstatement including CLE attendance and reimbursement for Bar costs, two-year probation with mentoring conditions); *In re Wiggins*, Supreme Court No. 12634 (order of May 25, 2007) (for neglect, failure to communicate, conflict of interest, and failure to respond to discipline charges involving five clients: suspension for 180 days with 90 days stayed, conditions of reinstatement including CLE attendance and restitution to client, probation for 90 days, and payment of $2,500 in Bar costs and attorney fees); *In re Cyrus*, Supreme Court No. S–12247 (order of Apr. 3, 2006) (six-month suspension for pattern neglect, lack of candor with court); *In re Miles*, Supreme Court No. S–12042 (order of Sept. 14, 2005) (90–day suspension, stayed, two year probation for neglect and failure to respond to disciplinary charges; public censure specifically for failure to respond); *In re Sutherland*, Supreme Court No. S–10550 (order of May 2, 2002) (three year suspension, one year stayed pending conditions, for gross neglect in management of client trust account); *In re Paine*, Supreme Court No. S–09452 (order of November 26, 2001) (disbarment for pattern neglect, failure to communicate, failure to account for and refund unearned fees, and dishonesty in disciplinary proceedings); *In re Artus*, Supreme Court No. S–9649 (order of May 1, 2000) (six month suspension for neglect and failure to communicate in one case, all but 90 days stayed on conditions of restitution and CLE attendance); *In re Johnson*, Supreme Court No. S–9414 (order of December 28, 1999) (disbarment for neglect in two cases, conflict of interest, misrepresentation and failure to respond to disciplinary charges); *In re Kohfield*, Supreme Court No. S–7995 (order of May 1, 1997) (two year suspension for neglect in five cases, failure to communicate, failure to account for client funds and failure to respond to disciplinary charges); *In re Frank*, Supreme Court No. S–8359 (order of November 24, 1997) (disbarment for neglect, dishonesty to client and false statements to Bar Counsel); *In re Beconovich*, Supreme Court Nos. S–5780/7110 (order of March 14, 1996) (three year suspension, 16 months stayed, for neglect, failure to communicate and failure to respond to disciplinary charges in four cases); *In re Cavanaugh*, Supreme Court No. S–7504 (order of February 15, 1996) (three year suspension for neglect, failure to communicate and failure to respond to disciplinary charges in four cases); *In re Crone*, Supreme Court No.S–6197 (order of March 31, 1994) (disbarment for neglect and misappropriation of client funds), discussed in *In re Morrill*, 904 P.2d 395 n. 1 (Alaska 1995); *In re Cusack*, Supreme Court No. S–6235 (June 3, 1994) (six month suspension,

four months stayed with conditions, for neglect of two matters involving single client, compounded with deception of client about case status, mitigated by diagnosed psychological condition); *In re Jarrell,* Supreme Court No. S–3280 (order of November 3, 1989) (four year suspension for abandoning practice); *In re Harless,* No. S–3050 (order of March 2, 1989) (four year suspension for pattern neglect and failure to respond to disciplinary charges); *In re Carlson,* No. S–2393 (order of May 6, 1988) (two year suspension for neglect in three cases and failure to answer grievances, stayed upon compliance with probation plan); *In re Clower,* No. S–2463 (order of March 18, 1988) (one year suspension for neglect in three cases and failure to answer grievances, stayed pending supervised probation, and censure).

*Deceit, dishonesty, fraud and misrepresentation*

64. The Supreme Court may consider the following reported opinions relating to lawyer dishonesty, fraud, misrepresentation, and misappropriation of client funds or property: *In re Friedman,* 23 P.3d 620 (Alaska 2001) (three year suspension for intentionally impairing trust account through premature fee advances, criminal misapplication of funds, and dishonesty in disciplinary proceedings); *In re Triem,* 929 P.2d 634, 648–49 (Alaska 1996) (public censure for false statement in letter to opposing counsel); *In re Morrill,* 904 P.2d 395, 396 (Alaska 1995) (suspension for five years less one day for misconduct including deceptive conduct toward court) (Rabinowitz, J., dissenting); *In re Wiederholt,* 877 P.2d 765 (Alaska 1994) (disbarment for misconduct including forgery of client name on settlement check, submission of false pleadings to court); *In re Mann,* 853 P.2d 1115 (Alaska 1993) (three year suspension for misappropriating $2,000 of client funds; mitigating factors included self-reporting misconduct); *In re West,* 805 P.2d 351 (Alaska 1991) (90 day suspension for counseling client to forge signature then falsely notarizing document); *In re Schuler,* 818 P.2d 138 (Alaska 1991)(two year suspension following conviction for misdemeanor theft); *In re Buckalew,* 731 P.2d 48 (Alaska 1986) (disbarment for fabricating court documents and embezzling $67,000 from client trust accounts); *In re Minor,* 681 P.2d 1347 (Alaska 1983) (90 day suspension for dishonesty in mishandling funds as fiduciary); *In re Walton,* 676 P.2d 1078 (Alaska 1983) (18 month suspension for submitting false documents likely to be relied on by court); *In re Stump,* 621 P.2d 263 (Alaska 1980) (five year suspension for creating false document and testifying to its authenticity).

65. The Supreme Court may also consider the following unreported actions by the court in cases involving dishonesty and misappropriation: *In re Paine,* Supreme Court No. S–09452 (order of November 26, 2001) (disbarment for multiple acts of misconduct including failure to account for and refund unearned fees, criminal misappropriation, dishonesty in disciplinary proceedings, pattern neglect and failure to communicate); *In re Bump,* Supreme Court No. S–9711 (Order of June 21, 2000) (disbarment after criminal conviction for felony theft in connection with scheme to hide money from wife in divorce); *In re Purdy,* Supreme Court No. S–8966 (order of March 26, 1999) (suspension for five years following conviction for misdemeanor forgery involving preparation of false car transfer documents, and for false statements to hearing officer in connection with the transfer); *In re LaParle,* Supreme Court No. S–8933 (order of March 9, 1999) (disbarment after conviction for felony theft and perjury in connection with scheme to hide client money from opposing party in divorce); *In re Breeze,* Supreme Court No. S–8484 (order of April 6, 1998) (disbarment after felony conviction for misapplication of client funds by conversion of $25,000 from trust account); *In re Frank,* Supreme Court No. S–8359 (order of November 24, 1997) (disbarment for dishonesty toward former employer, deception of client, alteration of court documents to cover up deception, and false statements to Bar Counsel); *In re Price,* Supreme Court No. S–7655 (order of July 5, 1996) (disbarment for misappropriation of

client funds); *In re McGee*, Supreme Court No. S–7364 (order of November 20, 1995) (disbarment for abandoning practice and misappropriating $60,000 in client trust funds); *In re Pace*, Supreme Court No. S–7301 (order of October 13, 1995) (disbarment for misappropriating $15,000 check proceeds after forging client's signature); *In Re Bennett*, Supreme Court No. S–7302 (order of October 30, 1995) (public censure for altering law firm bills to reflect work by partner instead of associate); *In re Cusack*, Supreme Court No. S–6235 (order of June 3, 1994) (six month suspension, four months stayed with conditions, for neglect and deception of one client); and *In re Crone*, Supreme Court No. S–6197 (order of March 31, 1994) (disbarment for neglect and misappropriation of client funds).

## STIPULATED DISCIPLINE

66. Subject to approval by the Disciplinary Board of the Bar and by the Alaska Supreme Court, Mr. McGrath and Bar Counsel agree that the appropriate level of discipline under Bar Rule 16(a)(2) is a suspension from the practice of law for three years.

67. Bar counsel and Mr. McGrath agree that the following conditions must be fulfilled before Mr. McGrath may apply for reinstatement with the Alaska Bar Association.

68. Mr. McGrath has already voluntarily made full restitution of monies owed to Ms. C. and Mr. B. Although no claims are pending, Mr. McGrath agrees that he must make full restitution of any amounts owed to the Lawyers' Fund for Client Protection, the Alaska Bar Association, and to any clients for any fee arbitration awards if any such matters subsequently arise.

69. Mr. McGrath must pay costs incurred by the Bar Association in this disciplinary matter and attorney fees in the amount of $1,000 prior to reinstatement.

70. Mr. McGrath must satisfactorily complete 6 hours of continuing legal education in legal ethics and 12 hours of continuing legal education in law office management courses approved by the Bar's CLE Director and Bar Counsel. Mr. McGrath must also obtain training in setting up and handling client funds and client trust accounts (with a program provided by a company or person approved by the Bar), and provide proof to the Bar of satisfactory completion of the program.

71. Mr. McGrath is required to present a detailed plan acceptable to Bar Counsel regarding his law practice financial procedures, including a plan for the handling of client funds with mandatory quarterly auditing and reporting for a period of two (2) years following readmission.

72. This stipulation is subject to approval by the Disciplinary Board and the Alaska Supreme Court.

DATED this 7th day of April, 2011, at Anchorage, Alaska.

ALASKA BAR ASSOCIATION

/S/

Louise R. Driscoll
Assistant Bar Counsel
Bar Member No. 8511152

DATED this 7th day of April, 2011, at Anchorage, Alaska.

/S/

Geoffrey J. McGrath
Respondent
Bar Member No. 9611068

### CONSENT OF RESPONDENT

Respondent hereby consents, pursuant to Alaska Bar Rule 22(h), to the discipline stipulated above and states that this consent is freely and voluntarily given and is not the subject of any coercion or duress and that respondent admits to the allegations set forth above.

DATED this 7th day of April, 2011, at Anchorage, Alaska.

/S/

Geoffrey J. McGrath
Respondent
Bar Member No. 9611068

SUBSCRIBED AND SWORN to before me this 7th day of April, 2011.

/S/

(SEAL)    Notary Public in and for Alaska

My commission expires:_____