In the DISCIPLINARY MATTER
INVOLVING Jody BRION,
Respondent.

No. S–13012.

Supreme Court of Alaska.

July 17, 2009.

Louise R. Driscoll, Assistant Bar Counsel, Stephen J. Van Goor, Bar Counsel, Anchorage, for Alaska Bar Association.

Jody Brion, pro se, Anchorage.

Before: FABE, Chief Justice, EASTAUGH, CARPENETI, and WINFREE, Justices.

## OPINION

PER CURIAM.

## I. INTRODUCTION

The Disciplinary Board of the Alaska Bar Association recommends suspending Jody Brion from the practice of law for three years, with two of those years stayed. Brion requests a shorter suspension. We agree with the Disciplinary Board and order the recommended suspension and related conditions for reinstatement.

## II. FACTS AND PROCEEDINGS

In April 2007 Bar Counsel for the Alaska Bar Association petitioned for a formal hearing on charges that, in his representation of certain clients, Brion had violated the Alaska Rules of Professional Conduct (Rules) relating to: (1) reasonable diligence and promptness; (2) failure to communicate; (3) failure to communicate properly the basis of his fees and to provide accounts of hours billed; (4) failure to properly care for client property; (5) failure to respond to the Bar Association regarding client grievances; and (6) a general failure to account properly for client funds and resulting conflicts of interest. The petition contained allegations specific to six different clients as well as allegations relating to general record keeping and mismanagement of funds.

Referring to former client J.M. of Louisiana, Bar Counsel alleged that Brion missed filing deadlines, did not timely forward his client's spousal support payment, and failed to file an alimony motion that his client had requested.

Referring to former client M.S. of Dutch Harbor, Bar Counsel alleged that Brion: (1) repeatedly failed to return client e-mails, phone calls, and faxes; (2) typically requested documents "just prior to court [discovery] deadlines"; (3) failed to meet court deadlines; and (4) submitted conflicting reports of hours worked.

Referring to former client M.D. of Vanuatu, an island nation in the South Pacific Ocean, Bar Counsel alleged that Brion missed important filings and did not respond to M.D.'s communications.

Referring to former client J.C. of Georgia, Bar Counsel alleged that Brion: (1) never provided J.C. with a fee schedule or written fee agreement; (2) failed to respond to J.C.'s requests for information about his case; (3) repeatedly promised to file certain motions but failed to do so; and (4) refunded the unused portion of the retainer by a check that was returned due to insufficient funds.

Referring to former client K.A., Bar Counsel alleged that Brion: (1) failed to file essential papers; (2) ignored court deadlines; and (3) did not return K.A.'s phone calls (although he billed her for the time spent listening to her messages).

Referring to former client T.H. of Virginia, Bar Counsel alleged that Brion: (1) never returned T.H.'s phone calls; (2) neglected to have papers served on T.H.'s wife; (3) mismanaged T.H.'s retainer by not timely returning the unused portion and failing to provide an invoice; and (4) failed to respond to a formal bar complaint.

Bar Counsel also charged Brion with violating Rules governing the safekeeping of client property and conflicts of interest. In August 2006 Bar Counsel received notice that Brion had overdrawn a trust account. During the subsequent investigation, Brion misrepresented to Bar Counsel where he had deposited certain checks and misrepresented the source of the money he deposited in the trust account to correct the overdraft.

In October 2007 an Area Hearing Committee (the Panel) convened to consider the charges against Brion, and the Panel issued a report in November. In the cases of J.M., J.C., K.A., and T.H., the Panel found by clear and convincing evidence that Brion violated Rule 1.3 (diligence) and Rule 1.4 (communication). Similarly the Panel found Brion violated Rule 1.5(b) (written fee agreement) in J.C.'s case and Rule 15(a)(4) (responding to formal bar complaint) in T.H.'s case. The Panel also found that Brion violated Rule 1.15 (handling client funds) in the trust account matter. The Panel did not make findings regarding charges relating to M.S. or M.D.

The Panel also addressed mitigating and aggravating circumstances. In mitigation the Panel found that Brion had shown by a preponderance of the evidence that he: (1) had no prior disciplinary record; (2) lacked a selfish or dishonest motive; (3) cooperated with and provided full and free disclosure to the Bar Association; and (4) showed remorse. In aggravation the Panel found that: (1) Brion had committed multiple offenses; (2) the clients Brion victimized were especially vulnerable to neglect and lack of diligence because most of them resided out-of-state; and (3) Brion had substantial legal experience.

The Panel's sanction recommendation was for three years of suspension (staying two years of that suspension), along with requirements that Brion participate in continuing legal education classes and, upon returning to practice, that he hire an office manager and find a mentor. The matter then was presented to the Disciplinary Board of the Bar Association.

In February 2008 the Disciplinary Board held a hearing and later issued findings, conclusions, and a recommendation. The Board adopted the Panel's report and recommended sanctions but added two conditions to Brion's reinstatement after the period of suspension—requiring retention of a certified public accountant for his office financial matters

and specifying twelve hours of relevant continuing legal education classes.

The Disciplinary Board's decision is now before us.

## III. STANDARD OF REVIEW

We review decisions of the Disciplinary Board pursuant to Alaska Bar Rule 22(r). We review the evidence and the factual findings of the Area Hearing Panel independently but give deference to findings made by the Disciplinary Board.[1] We review the Board's disciplinary recommendations—including the appropriateness of sanctions—independently.[2]

## IV. DISCUSSION

Brion contends that the Disciplinary Board erred by adopting the Panel's suspension recommendation because it was based on a faulty analysis—namely that the base period of suspension should be symmetrical to the length of time Brion neglected his clients. Brion argues that the period of suspension was too severe and was inconsistent with prior disciplinary decisions. Brion also argues that the hearing before the Disciplinary Board was "rife with substantive and procedural deficiencies." Brion devotes considerable attention to the last point, arguing that: (1) the Disciplinary Board turned his oral argument "into a general fact finding question and answer evidentiary hearing"; (2) the Disciplinary Board relied on advice from Bar Counsel rather than the Disciplinary Board's independent counsel; (3) a member of the Disciplinary Board was wrongfully disqualified due to her prior role in the case; (4) the record and case law were not timely provided to the Disciplinary Board; and (5) Assistant Bar Counsel used her presentation to engage in "pervasive character assassination and vilification."

### A. Is the Sanction Appropriate?

#### 1. Use of the "symmetry" approach; ABA standards

The Panel recommended a three-year suspension, looking "to the length of neglect

---

1. *In re Frost,* 863 P.2d 843, 844 (Alaska 1993).

2. *Id.* at 844–45; *see also In re Wiederholt,* 877 P.2d 765, 767 (Alaska 1994).

[Brion] imposed on his clients" and then taking "the longest delay imposed on one client—ten months—as the starting point for its recommendation." It noted that this created a sort of "symmetry." From this starting point the Panel added suspension time to reflect aggravating and mitigating factors. The Disciplinary Board adopted the recommended suspension without additional comment or analysis.

■ Brion contends the "symmetry" reasoning is ad hoc, and no precedent supports it. We agree with Brion on this point. But we also agree with the Bar Association that the Disciplinary Board did not base its decision solely on this reasoning, but rather relied on "its own experience with discipline matters, guidance provided by Alaska discipline decisions, and the guidelines provided by ABA Standards for Imposing Sanctions."

ABA Standards for Imposing Lawyer Sanctions provide the framework for sanctioning lawyers.[3] The first step in the analysis addresses "the first three prongs of the ABA Standards for imposing sanctions, determining the duty violated, the lawyer's mental state, and the extent of the actual or potential injury."[4] The second step looks to the ABA Standards to determine what sanction is recommended for the type of misconduct at issue.[5] The final step assesses aggravating and mitigating circumstances to determine whether they warrant any amendment to the recommended sanction.[6] Applying this three-step analysis here, we conclude that the Disciplinary Board's recommendation is appropriate.

**Step One:** The primary duty violated was Brion's duty to his clients. His mental state was at least negligent for all the violations. We agree with the Panel's finding that ultimately—in light of the numerous times clients complained to him—Brion's lack of diligence was committed knowingly. The record contains substantial evidence of harm caused to Brion's clients.

**Step Two:** In a case involving lack of diligence, the ABA Standards provide that "[s]uspension is generally appropriate when: (a) a lawyer knowingly fails to perform services for a client and causes injury or potential injury to a client, or (b) a lawyer engages in a pattern of neglect [and] causes injury or potential injury to a client."[7] We agree that Brion acted knowingly in some cases, while other cases demonstrate a "pattern of neglect," and that a period of suspension is an appropriate sanction.

**Step Three:** We agree with the Panel's findings of aggravating and mitigating factors. We conclude that on balance they do not warrant a sanction other than suspension, and that the weight of the aggravating factors makes a lengthy suspension appropriate. We therefore conclude that a three-year suspension (with two of those years stayed) is an appropriate sanction. We also agree with the Board's recommended conditions of reinstatement, as they are designed to assist Brion in his return to practice and ultimately will lower the probability of needing to reinstate the stayed years of suspension.

### 2. Comparison with prior disciplinary decisions

Brion asserts that his suspension is too severe a sanction when compared to prior suspensions recommended by the Disciplinary Board. In particular Brion asserts his conduct was less aggravated than that in *In re Miles*[8] and *In re Kohfield*.[9] The Panel considered these cases and concluded that Brion's conduct was more aggravated than Miles's and comparable to Kohfield's.

---

3. *E.g., In re Ford*, 128 P.3d 178, 182 (Alaska 2006); *In re Buckalew*, 731 P.2d 48, 52 (Alaska 1986).

4. *E.g., In re Friedman*, 23 P.3d 620, 625 (Alaska 2001).

5. *In re Schuler*, 818 P.2d 138, 140 (Alaska 1991).

6. *Id.*

7. Standards for Imposing Lawyer Sanctions 4.42 (ABA 1992).

8. *In re Miles*, Stipulation for Discipline by Consent Pursuant to Alaska Bar Rule 22(h), 11 (Apr. 4, 2005).

9. *In re Kohfield*, Stipulation for Discipline by Consent Pursuant to Alaska Bar Rule 22(h), 24–25 (Jan. 6, 1997).

The *Miles* case involved charges of neglect, poor communication, failure to properly terminate representation, and mismanagement of client funds.[10] The parties stipulated to a ninety-day stayed suspension with a two-year probation period, which we affirmed.[11] As mitigating factors the stipulation noted that during the period of Miles's misconduct: (1) her marriage was breaking down; (2) several of her family members refused to talk to her due to her marital problems; (3) she was in the process of closing her law practice; and (4) she suffered severe injuries (concussion, dislocated shoulder, knee injuries, bruised kidneys, and a splinter in her eye) while running the Iditarod.[12] Brion's misconduct was more aggravated than Miles's, and given the absence of similar mitigating factors—or any events sufficiently severe or disruptive to explain his neglect and other disciplinary violations—the recommended sanction is not inappropriate.

Brion convincingly argues that his misconduct was less harmful and aggravated than Kohfield's misconduct, which included neglect, failure to communicate, failure to safekeep, refund, and account for client funds, and failure to respond to grievances.[13] But in that case Kohfield stipulated to an active two-year suspension, twice as long as Brion's, along with related conditions, which we affirmed.[14] And Brion fails to recognize that in Kohfield's case there were many mitigating factors not present here, in that Kohfield: (1) had been chronically ill; (2) had traveled long distances to visit a brother who was seriously ill; (3) had serious computer problems that led to lost files; (4) had to move offices; (5) was severely depressed; (6) discovered that his roommate had sexually molested his girlfriend's daughter; and (7) found the body of his roommate who, after having been confronted about the abuse, had killed himself.[15] Brion has not shown mitigating factors of similar weight in his case, so

although Kohfield's misconduct was worse, his active suspension was longer and Brion's sanction is justified.

## B. Did the Board Hearing Comply with Due Process?

### 1. Fact-finding at oral argument

■ Brion first alleges that the Disciplinary Board engaged in impermissible fact-finding at his oral argument before the Board. He argues that this was a violation of the protections of procedural due process—in particular, that he was not given adequate notice of what the hearing would involve and that he had no opportunity to cross-examine witnesses or to present his own witnesses. The Bar Association disputes Brion's allegation that he did not receive adequate notice of the timing and nature of the proceedings. The Bar Association notes that Brion "encouraged" the Disciplinary Board to ask him questions during his argument. The Bar Association further notes that "[n]othing prohibited the Board from asking questions of Mr. Brion or bar counsel to help the Board to determine whether the proposed sanction was appropriate."

The Alaska Bar Rules provide the Disciplinary Board with power to "review and modify the findings of fact, conclusions of law, and recommendations of Hearing Committees regardless of whether there has been an appeal to the Board, and without regard to the discipline recommended by the Hearing Committees."[16] The transcript of the hearing reveals that: (1) Brion invited questions from the Board ("[I]f there is anything you want to know, feel free to interrupt me and ask questions."); (2) the Board's only interruption of Brion's prepared remarks was to clarify a procedural question Brion raised about appealing a disciplinary matter; (3) the Board's questions came at the end of

---

**10.** *In re Miles* at 11.

**11.** Alaska Supreme Court Order No. S–12042 (Sept. 14, 2005).

**12.** *Id.* at 14.

**13.** *In re Kohfield,* at 19–20.

**14.** Alaska Supreme Court Order No. S–07995 (April 1, 1997).

**15.** *Id.* at 24–25.

**16.** Alaska Bar R. 10(c)(5).

Brion's prepared remarks and mostly tended to clarify factual matters, such as Brion's staffing situation at the time of the neglect, or to give him more time to explain issues he had raised in his remarks; and (4) after Assistant Bar Counsel's argument, the Board also questioned matters she had raised. This was an oral argument, not an evidentiary hearing, but the Board's questions were appropriate to the setting.

### 2. Notice

■ Brion alleges that he was not given adequate notice of what the hearing would involve. Bar Rule 10(c)(5) gives notice of the Disciplinary Board's capacity to "review and modify findings of fact." [17] The Bar Association mailed Brion a letter informing him of the date and time of his hearing, along with a document entitled "Information for Respondent Attorneys and Respondents' Counsel in Disciplinary Cases before the Disciplinary Board." That document included the following instruction:

> As with stipulations, respondent's counsel and the respondent must be thoroughly prepared for the Board proceeding and be ready to answer questions concerning the underlying facts, the legal issues presented, and the application of the American Bar Association Standards for Imposing Lawyer Sanctions. Counsel and the respondent should be particularly prepared to discuss the duties violated, the respondent's mental state, the extent of injury or potential injury caused by the conduct, the sanction suggested by the Standards, and the existence of aggravating and mitigating circumstances.

Under any standard this provides sufficient notice of the nature of the proceedings, as well as the likelihood that the Board would question Brion at oral arguments.

### 3. Cross-examination of witnesses

■ Brion contends that he was denied the opportunity "to cross examine witnesses who testified against him at the Board" even though he admits there were no witnesses at the hearing. Brion contends that "the source of a great deal of information that went outside the record was Assistant Bar Counsel, who was not available for cross examination after her diatribe." But the transcript of Assistant Bar Counsel's remarks reveals that: (1) she did not deviate from information in the record; (2) she gave Brion the opportunity to correct factual assertions; (3) her remarks cannot be characterized as a "diatribe"; [18] and (4) Brion was given an opportunity to rebut those remarks. Brion's argument about cross-examination of witnesses is without merit.

### 4. Questions addressed to Bar Counsel

■ Brion alleges that the Disciplinary Board violated due process by directing questions to Bar Counsel rather than to the independent counsel assisting the Disciplinary Board. The Bar Association contends that Brion has misconstrued the record, and that Bar Counsel acted appropriately and did not advise the `Disciplinary Board on any matter of substance.

Brion cites to three points in the record where Bar Counsel allegedly advised the Disciplinary Board: (1) Bar Counsel relaying a message from the court reporter that "there is a problem with cell phones interfering with the recording" and advising all those present to turn off their cell phones; (2) Assistant Bar Counsel interrupting proceedings to note that one of the Board members might have been the Discipline Liaison on the case and likely would be barred from participating in the decision; and (3) Assistant Bar Counsel confirming that her records showed the Board member had been the Discipline Liaison and thus was barred from participating.

■ The first of these incidents is simply not, as Brion alleges, a case of Bar Counsel acting as a legal advisor to the Disciplinary Board. As to the second two incidents, we have said that "minimum requirements of procedural due process are not offended by the attorney for the agency acting as advisor

---

**17.** *In re Ford,* 128 P.3d at 182.

**18.** Webster's Dictionary defines diatribe as "a bitter and abusive speech." WEBSTER'S THIRD NEW INT'L DICTIONARY 625 (3d ed.1986).

on procedural matters." [19] The Alaska Bar Rules make clear that a Discipline Liaison must "be excused from sitting on any grievance or disability matter in which the Liaison has knowledge of the matter arising from the performance of the Liaison's duties." [20] It was not a due process violation for Assistant Bar Counsel to point out the Rule and give the Discipline Liaison the opportunity to be excused from further proceedings.

### 5. Disqualification of Discipline Liaison

Brion argues that removal of the Discipline Liaison from the Disciplinary Board violated due process. He labels this removal "strange and troubling" because "the questions that the [Discipline Liaison] asked seemed to be sympathetic to Mr. Brion's position." [21]

The Discipline Liaison's question began, "In some of your pleadings you put down that you recognize that your family practice was...." At this point Assistant Bar Counsel interrupted, alerting the Board that the speaker had been the Discipline Liaison for the case. There is no indication that this question would have been "sympathetic" to Brion. Nor is there any indication of an ulterior or nefarious motive for removing the Discipline Liaison from consideration of Brion's case. The transcript reflects only an intent to comply with Bar Rules and to make sure that the Discipline Liaison did not bring any bias to the decision, given that she had been exposed to evidence not properly before the Board.

### 6. Failure to provide record to Board

Brion alleges that the Disciplinary Board had not been provided with the record in his case prior to the hearing and that the Board members therefore were unable to make an informed decision. He also alleges that not having the record resulted in the only "source of information [being] the non-

testimonial diatribe of Assistant Bar Counsel."

Brion cites to a section of the hearing transcript to support his claim that the Board did not receive the record. But that section does not support his claim. Rather it demonstrates that the Board members received the record and had time to familiarize themselves with its content, as they cited to it in their questions to Bar Counsel. The record also contains an affidavit of service showing that the Bar Association sent Brion and all members of the Disciplinary Board copies of the record on January 3, 2008.

Brion's claim is therefore meritless.

### 7. Failure to provide prior cases to Board

Brion alleges that prior Alaska discipline cases were not provided to the Disciplinary Board and that these "were *crucial* to a reasoned decision on the severity of the discipline" (emphasis in original). In response the Bar Association argues that: (1) the decisions were helpful, but not crucial; and (2) the Disciplinary Board had access to the decisions.

Brion cites to several pages in the hearing transcript to support his claim that the Disciplinary Board had not been provided the relevant prior Alaska discipline cases. But those pages do not support his claim. Rather they show that the Board members were familiar with, asked follow-up questions about, and had access to the cases.

Brion's claim is therefore meritless.

### 8. "Pervasive character assassination"

Brion's final allegation is that Assistant Bar Counsel used her remarks to engage in "pervasive character assassination and vilification that was not part of the record" and that he was allowed inadequate time to rebut these remarks. Brion's claim of "character assassination" is without sup-

**19.** *In re Cornelius*, 520 P.2d 76, 84 (Alaska 1974).

**20.** Alaska Bar R. 10(f)(3).

**21.** He also argues that the removal of the Discipline Liaison was unlawful because it was "based upon a recommendation and legal advice by [Assistant Bar Counsel]." As noted earlier, this argument has no merit.

port. Assistant Bar Counsel's presentation was relatively brief, contained no inflammatory or otherwise inappropriate remarks, and did not stray from the record. She then answered questions from the Disciplinary Board. Her responses to Board member questions were similarly appropriate—even commenting that Brion should correct her on factual matters if necessary. As for Brion's rebuttal, the chair of the Disciplinary Board explained that Brion would have a brief time to respond, but it would be "very limited" because Brion's opening presentation had been unusually lengthy.

Brion's claim is therefore meritless.

## V.  CONCLUSION

We accept the Disciplinary Board's recommendation to suspend Jody Brion from the practice of law for three years, with two years of suspension stayed.

We also accept the Disciplinary Board's recommendations for conditions of reinstatement. To be reinstated, Brion must complete twelve hours of Bar Association continuing legal education classes relating to law-office management and accounting. During the two years following his reinstatement, Brion also must: (1) retain an office manager (who may not be a relative or a person with a direct financial interest in his practice) with appropriate law-office experience to assist in billing, case management, and trust account management; (2) hire a licensed and insured certified public accountant to oversee all general and trust accounts of the firm and to provide annual written reports to the Bar; and (3) establish a mentor relationship with an attorney approved by the Bar Association and consult with that mentor bi-weekly, for no less than fifteen minutes per meeting, about case management issues.

MATTHEWS, Justice, not participating.