*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| In The Reinstatement Matter Involving ) | |
| ) | Supreme Court No. S-17078 |
| JODY P. BRION, ) | ABA File No. 2018R002 |
| ) | |
| ) | O P I N I O N |
| ) | |
| ) | No. 7437 – April 3, 2020 |

Appeal from the Alaska Bar Association Disciplinary Board.

Appearances: William F. Brattain II, Baker Brattain, LLC, Anchorage, for Petitioner. Louise Driscoll, Assistant Bar Counsel, and Nelson G. Page, Bar Counsel, Anchorage, for Alaska Bar Association.

Before: Bolger, Chief Justice, Winfree, Stowers, Maassen, and Carney, Justices.

WINFREE, Justice.

## I. INTRODUCTION

A petitioner appeals a recommendation against his reinstatement to the practice of law after disbarment, asserting that the underlying proceeding did not afford him due process, that we need not defer to the recommendation, that an impossible reinstatement condition was imposed, and that there were errors in weighing evidence and applying reinstatement standards. We accept the recommendation and deny the petition for reinstatement.

## II.  FACTS AND PROCEEDINGS

Jody P. Brion was admitted to the Alaska Bar Association in 1989.  Brion was suspended in 2009[1] and then disbarred in 2010.[2]

### A.  Suspension

Brion first appeared before an Area Hearing Committee in October 2007 regarding alleged misconduct involving six clients he had represented.[3]  The Hearing Committee found Brion had violated his duties of diligence, communication, and handling client funds, among others.[4]  The Hearing Committee addressed mitigating factors — Brion had no previous disciplinary record, cooperated with the Bar Association, lacked a dishonest motive, and showed remorse — and aggravating factors — Brion had committed multiple offenses, had substantial legal experience, and had victimized vulnerable out-of-state clients.[5]  The Hearing Committee recommended suspending Brion from practicing law for three years, staying two of those years subject to Brion improving his management practices.[6]  The Disciplinary Board adopted the Hearing Committee's recommendation in February 2008, adding reinstatement

---

[1]  *In re Discipline of Brion*, 212 P.3d 748, 756 (Alaska 2009).

[2]  *In re Discipline of Brion*, No. S-13722 (Alaska Supreme Court Amended Order, Mar. 24, 2010).

[3]  *In re Brion*, 212 P.3d at 750.  The events underlying Brion's suspension are outlined in our earlier opinion, and in this decision we only briefly detail the related proceedings.  *See id.* at 750-51.

[4]  *Id*. at 751.

[5]  *Id*.

[6]  *Id*. Proposed reinstatement conditions included completing continuing legal education in management and accounting, retaining an office manager for two years, and finding an approved attorney mentor for two years.  *Id*. at 751, 756.

conditions that required retaining a certified public accountant and completing 12 hours of relevant continuing legal education.[7] In July 2009 we ordered the recommended suspension and related reinstatement conditions.[8]

## B. Disbarment

While the suspension proceedings were pending, 18 additional grievances regarding 9 clients were lodged against Brion, all relating to similar issues of neglect, failure to communicate, and failure to account for client funds. Brion did not participate in the disciplinary process. Brion now explains he was not opening mail from the Bar Association at the time because he "didn't see a way to fix things." In July 2009 a Hearing Committee recommended disbarment. The Hearing Committee determined that Brion was unwilling to abide by the professional conduct rules and that the client relationships either were "ongoing at the time of the earlier hearing, or began after that hearing." The Hearing Committee noted that "instead of taking . . . remedial steps, [he] accumulated grievances at an increased rate."

In October 2009 the Disciplinary Board adopted the Hearing Committee's findings, conclusions, and recommendation for disbarment; the Disciplinary Board recommended several additional conditions for possible reinstatement. In March 2010 we disbarred Brion and adopted the recommended reinstatement conditions:

    a.    Brion must make full restitution of any amounts owed to the Lawyers' Fund for Client Protection, the Alaska Bar Association, and to all clients for any fee arbitration awards that remain unpaid;

    b.    Brion is required to pay any costs and fees incurred by the Bar Association in this disciplinary matter in an amount to be determined;

---

[7]     *Id*. at 751.

[8]     *Id*. at 756.

c. Brion is required to pay for a forensic audit of his law firm related accounts for the three years prior to his suspension to determine whether client funds were properly allocated or refunded;

d. Brion is required to make repayment of any losses discovered in the course of the forensic audit;

e. Brion is required to complete six hours of approved CLE credits in attorney ethics, 12 hours of approved CLE credits in law office management, and he shall take and pass a Multi-State Professional Responsibility Examination (MPRE); [and]

f. Brion is required to present a detailed plan acceptable to the Disciplinary Board regarding his law practice financial procedures, including, but not limited to, handling of client funds. This plan shall include a means for independent monitoring and verification of the implementation of such procedures.[9]

## C. Reinstatement Petition

Brion applied for reinstatement in May 2018.[10]

### 1. Legal framework for reinstatement

Alaska Bar Rule 29 governs a suspended or disbarred attorney's petition for reinstatement. Rule 29 requires a petitioner to prove by clear and convincing evidence "(1) that [the petitioner] has the moral qualifications, competency, and knowledge of the law requisite to the practice of law; and (2) that [the petitioner's]

---

[9] *In re Discipline of Brion*, No. S-13722 (Alaska Supreme Court Amended Order, Mar. 24, 2010).

[10] *See* Alaska Bar R. 29(b)(5) ("An attorney who has been disbarred by order of the Court may not be reinstated until the expiration of at least five years from the effective date of the disbarment.").

reinstatement will not be detrimental to the Bar, the administration of justice, or the public interest."[11]

A Hearing Committee takes evidence and issues a report to the Disciplinary Board, which reviews the record and report; the Disciplinary Board then forwards to us its own findings of fact, conclusions of law, and reinstatement recommendations.[12] We use the ten factors outlined by *In re Pier Reinstatement*[13] (*Pier* factors) to guide the reinstatement inquiry:

> (1) the petitioner's present moral fitness; (2) the petitioner's acceptance of wrongdoing with sincerity and honesty; (3) the extent of the petitioner's rehabilitation; (4) the nature and seriousness of the original misconduct; (5) the petitioner's conduct following discipline; (6) the time elapsed since the original discipline; (7) the petitioner's character, maturity, and experience at the time of discipline and at present; (8) the petitioner's current competency and qualifications to practice law; (9) restitution; and (10) the proof that the petitioner's return to the practice of law will not be detrimental to the integrity and standing of the bar or the administration of justice, or subversive of the public interest.[14]

### 2. Hearing Committee proceedings

A Hearing Committee held a hearing on Brion's reinstatement petition in November 2018. Bar Counsel took no position, explaining that Brion had the burden to demonstrate entitlement to reinstatement by clear and convincing evidence. Brion and

---

[11] *In re Reinstatement of Wiederholt* (*Wiederholt V*), 295 P.3d 396, 399 (Alaska 2013).

[12] Alaska Bar R. 29(c).

[13] 561 N.W.2d 297 (S.D. 1997).

[14] *In re Reinstatement of Wiederholt* (*Wiederholt II*), 24 P.3d 1219, 1224-25 (Alaska 2001) (adopting factors identified in *In re Pier*, 561 N.W.2d at 301).

other witnesses testified on his behalf, including six Alaskan attorneys he worked with as a paralegal since his disbarment, his psychologist, and a friend he met through his hiking organization. We summarize the relevant testimony as follows.

Ryan Roley, an attorney practicing since at least 1988, testified that he has known Brion since law school and had a "few cases opposing" him. Roley testified to Brion doing "frequent" competent paralegal contract work since "late 2010" and providing timely invoicing. Roley stated his belief that Brion "is competent to once again practice." When asked about Brion's moral fitness, Roley responded that he noticed no "flag[s]" and considered Brion to be honest and trustworthy. Roley testified that he was unaware of the disciplinary proceedings against Brion when they took place but that when offering paralegal services Brion had informed Roley about being disbarred. Roley did not remember the exact number of grievances, but he recalled reading a decision and described the grievances as including "not returning communication requests from clients, missing deadlines[,] . . . [and] trust fund irregularities." He also recalled the prior suspension proceeding and that all of the complaints were "overlapping" and alleged "similar conduct." Based on their discussions, Roley believed Brion was "regretful" about his disbarment and was "owning it." When asked whether Brion had prior or current substance abuse issues, Roley responded that he was unaware of any.

Rita Allee, an attorney for 43 years, testified that she had tried one case "sometime in the '90s" against Brion and that he was "professional" and "reasonable." She testified that Brion had told her about his suspension and disbarment and that she understood he took it as a "maturing, learning opportunity." She stated that she had contracted Brion as a paralegal "fairly extensively" since 2016 and that he had been timely, "extremely responsive," provided "immediate" invoicing, and had cogent legal reasoning. Allee reported "nothing in [their] relationship" that would give her pause in

recommending his reinstatement. When asked about the nature of his disbarment, Allee recalled "an element" of the "situation" related to being overloaded and "fail[ing] to ask for help." Allee testified that, based on her experience, she believed Brion now knows to ask for help and is "imminently trustworthy with respect to practice." On cross-examination, Allee testified that she did not know the exact number of grievances or clients harmed and had not read the related decisions but that she expected the circumstances to be "quite compelling" to result in disbarment.

Hal Gazaway, an attorney for over 40 years, testified that he had a few cases opposing Brion prior to his disbarment. Gazaway testified he had seen Brion prior to the disciplinary proceedings "at the courthouse quite a bit" and had noticed Brion seemed "kind of frazzled," "preoccupied," and "like he was losing focus." Gazaway stated he later saw the suspension order in the paper but did not read the opinion. Gazaway could not recall all the details, but he said that Brion "was very candid about the nature of his disbarment," that he had made "serious mistakes," and that he "probably told [Gazaway] a lot more than [he] wanted to hear." Gazaway said he had invited Brion to a substance abuse group, but Brion had responded that substance abuse was not the issue that led to his problems; he explained he was "overextended," was "not paying attention to his commitments," and "had some personal issues." According to Gazaway, Brion started doing paralegal work for Gazaway sometime before 2012, and Brion completed tasks "promptly and efficiently" and provided timely invoices. Gazaway testified to his belief that Brion "would go back to being a very productive and strong advocate."

Michelle Minor, an attorney for 43 years, testified that she had a few cases opposing Brion prior to his suspension and disbarment and that she had found him "easy to work with, responsive, [and] highly competent." She stated that she had read about Brion's disbarment, that she had read one opinion, and that Brion had been "very

forthright in telling [her] about what he had done and what the opinions said." Minor did not recall "exactly what" Brion said, but she remembered it had something to do with "financial" and "emotional" issues. She stated that Brion began doing paralegal work for her in 2010 and that since then she had "seen" Brion become "more self-confident about his abilities." She testified that in the last three to four years Brion seemed more invested in seeking readmission.

Michael Schneider, an attorney for 43 years, testified that he "connected with . . . Brion in approximately October of 2011." Brion had been recommended by Schneider's paralegal, who previously had worked with Brion. Schneider estimated that he had Brion complete about 100 hours of paralegal work annually. Schneider stated that he was "quite impressed" and that Brion's work was consistently timely and on-budget. Schneider testified that Brion had disclosed his disbarment, and Schneider liked that Brion did not "complain[] about the discipline." When asked about the number of grievances, Schneider recalled that there were 18.

Dr. Rick Graber, a psychologist since the late 1980s, testified that he met Brion in October 2018 and had seen him for a total of four sessions. As Dr. Graber reported in a letter to the Bar, he concluded that Brion likely was clinically depressed when he committed the misconduct leading to his disbarment and that depression likely affected his judgment. Dr. Graber indicated in his letter "there were multiple factors in [Brion's] life, both personal and professional, that likely triggered that depression and the subsequent problems he had at the time fulfilling his duties as an attorney." Dr. Graber testified that these factors included Brion having a solo practice, overestimating his capacity, not asking for help, having a "tough" marriage, and lacking "social supports."

Dr. Graber indicated that Brion now seems to understand his limitations and his available resources, is in "a much better place with relationships," and "is much better

positioned to be able to evaluate his performance." Dr. Graber said Brion now shows "very minimal" depressive symptoms, based on his observations of Brion's behavior and on a self-reporting inventory (without validity measures). On cross-examination Dr. Graber indicated he did not know about the nature of Brion's disbarment in great detail, but Dr. Graber explained his understanding: "Brion was disbarred because he got basically overwhelmed by the amount of work[,] . . . he dropped responsibilities, client needs were kind of met at a minimal level[,] . . . [a]nd he did not seek help." Dr. Graber stated he was aware Brion had seen a psychiatrist years ago but had not seen the records and did not know why and for how long Brion sought treatment.

Elizabeth Provenzano, a police dispatcher, testified that she met Brion in 2017. She explained that about a year after her husband's death, she joined a hiking group Brion was active in and he warmly welcomed her to the group; she regards him as a "good person," a "very good friend," someone she trusts with her children, and someone she would seek as legal counsel. Provenzano stated that about eight months ago when discussing "how [they] had come to be where [they were]" Brion had told her he made "some bad choices" and he "owned [up to] everything."

Brion testified on his own behalf, elaborating on his family background, his schooling, and his professional career. He said he passed the Alaska bar exam in 1989, went to Hawaii for a few months, spent a year clerking in Alaska for the superior court, and briefly moved to Oregon. He then settled in Alaska, working for a small firm before opening his own practice and working mostly as a solo practitioner thereafter.

His testimony focused on his practice in the years prior to his suspension and disbarment. Brion explained that his practice had been going "really well" but that he "lost a lot of money" when he moved to a bigger office and hired an associate. Brion clarified that he never employed a secretary or office assistant and that he handled his own finances. According to Brion, before things "started going south" he had 50 to 70

open clients and handled "everything" himself. He admitted things started "slipping" in 2007 and "hit the brick wall" in 2009, but he did not know exactly "when things got so overwhelming." Brion was receiving client complaints and calls from the Bar, and he described having had an attitude of, "I'll take care of it"; he explained "what went wrong":

> I stopped being able to function . . . . It was a matter of – of being so sad and being so overwhelmed that . . . I wasn't thinking clearly, obviously, and I wasn't able to come back and fix things. I wasn't able to have that – that crisis that would show up in front of my face, something I'd been dealing with for decades, and being able to take care of it . . . . And then when one magnified to two, to four, to eight, at – at some point it became so overwhelming that I was just unable to – to do anything, and that's when I broke.

Brion further clarified that "[t]here were no substance abuses involved" but that he formed a computer gaming "addiction" as "an escape from a really horrific life of stress." He believed he was depressed at the time and the depression led to being overwhelmed. He described his "unhappy marriage" as a "stressor[]." Brion stated he separated from his wife, went to live with his brother, and started an unsuccessful window-washing business. Brion explained that in the summer of 2010, he realized he "wanted to change things" and became "honest" with himself. He testified to knowing he had "caused people a lot of pain" and "cost people a lot of money" and being "mortified" when he recently reread the findings.

Brion explained that since being disbarred he has "learned to delegate"; he does not and will not have the same "pressures," because he is "happily" remarried and his "kids are grown"; he is "able to recognize issues and symptoms"; and, if reinstated, he would commit to continue seeing Dr. Graber for at least three years. Brion testified to having seen a psychiatrist after his disbarment, but he could not afford the sessions;

he recently began seeing Dr. Graber. Brion also described making different lifestyle choices, including body-building, eating healthier, and hiking. Brion described a hiking club he had expanded from 10 to 3,850 people and its therapeutic value. Brion reiterated that he did not want to "run an office [by himself] anymore," that he had learned he could "avail [himself]" of others, that he would not take on as heavy a load, and that he would find "immediate fix[es]" for problems instead of ignoring them. Regarding his previous gaming addiction, Brion testified he no longer has an interest in gaming and "gave it up."

Concerning the disbarment order's forensic audit reinstatement condition, Brion explained there was no way to reconstruct his financial records for an audit. He stated that he had disposed of his office and client files after he was suspended but before he was disbarred, that he had not opened the related mail from the Bar Association, and that he was not trying to destroy evidence. Brion said his files had been in a storage unit, but he could not pay the storage fees; when he made the decision to dispose of the files he felt he had "no ability" to "overcome the stuff that had just happened," and he had "no intention" of again being a lawyer. He believed some open files had been "transitioned over" to another attorney, and the files he threw away contained financial records and closed client files.

Brion testified to having made restitution and paid the amounts owed the Bar Association the prior week. When asked about the change in financial situation allowing for repayment, Brion explained that he had remarried in September 2018 and that the money came from his wife's retirement account. He also explained that he had published notice in the Alaska Journal of Commerce attempting to reach former clients who may have claims and that he would be willing to waive procedural defenses to future client claims. Brion acknowledged not having apologized to clients; he indicated that he owed apologies and could make them to the clients who had filed grievances.

William Brattain, Brion's counsel and an Alaska practitioner since 1972, testified to working regularly with Brion since 2011. Brattain stated Brion disclosed his disbarment in detail during an interview for paralegal work. Based on Brattain's evaluation of Brion's professional and personal abilities, Brattain believed Brion is remorseful and should be reinstated. Brattain also believed Brion "has come to terms with the lack of his skill set" that previously had "[led] him to" become "overloaded.

On cross-examination Bar Counsel questioned Brattain about the proposed arrangement for Brion to work as an attorney specializing in family law at Brattain's law firm. Brattain discussed a service contract, under which Brion would work as an independent contractor, and a reinstatement plan, which Brattain believed would prevent Brion taking outside clients. Brattain clarified that these were only drafts and that he and Brion could change any provisions of concern. Brattain described how he planned to supervise Brion in practice: form a litigation plan, give each client an estimate and billing plan, give Brion assignments, review Brion's work product, and engage in case-management meetings with Brion on a weekly or biweekly basis. Brattain explained that he would notify the Bar Association if the arrangement did not work out.

In closing arguments Bar Counsel indicated that he did not doubt Brion's sincerity or Brattain's commitment to ensuring any reinstatement would be successful. Bar Counsel reviewed a few relevant factors guiding a reinstatement inquiry. He noted that the original misconduct was very serious and then focused on the extent of Brion's rehabilitation, explaining that it was difficult to gauge because Brion's destruction of files made knowing all the victims affected impossible. Bar Counsel left it to the Hearing Committee to judge Brion's character, maturity, and experience at the time of discipline and at present; to determine whether Brion's return to practicing law would not be detrimental to the integrity and standing of the Bar or the administration of justice; and

to decide whether Brion could circumvent the reinstatement condition relating to the forensic audit.

### 3. Hearing Committee's report

The Hearing Committee made its recommendation to the Disciplinary Board in January 2019. The Hearing Committee determined that Brion had not proved by clear and convincing evidence either his moral fitness or that his reinstatement would not be detrimental to the Bar Association, the administration of justice, or the public interest. The Hearing Committee also determined Brion had not met conditions we imposed regarding a forensic audit and client repayments. The Hearing Committee found the non-party witnesses "credible," but it deemed some of the testimony "more or less persuasive" based on the "witnesses' level of familiarity with [Brion], the circumstances of his disbarment[,] and his subsequent efforts at rehabilitation." The Hearing Committee recommended denying reinstatement.

The Hearing Committee qualified much of the testimony it had heard. It recognized that attorney witnesses Roley, Allee, Gazaway, and Minor knew Brion prior to suspension as adversaries in a professional setting, but it found that only Brattain was "familiar with the details of the moral or ethical issues" leading to disbarment. The Hearing Committee determined that Brion and other witnesses had confirmed he acknowledged responsibility, but it found his actions inconsistent; Brion had "made no attempt to apologize to or repay any victim" until making restitution to the Bar Association "shortly before the hearing" at the "insistence of Bar Counsel." The Hearing Committee discounted Dr. Graber's testimony because of "his limited contact with [Brion]" and his "limited knowledge of the personal and professional pressures of

practicing law" and of Brion's "personal situation." The Hearing Committee then addressed the *Pier* factors[15] as a guide to deciding Brion's reinstatement request.

Concerning the first factor — present moral fitness — the Hearing Committee found no clear and convincing evidence that the conditions contributing to Brion's disbarment had been "sufficiently identified and addressed." It noted that currently being in a "loving and stable" marriage "does not provide conclusive evidence" that Brion's life will be without the stressors contributing to his previous conduct.

Concerning the second factor — acceptance of wrongdoing with sincerity and honesty — the Hearing Committee found that Brion had "intellectually accepted responsibility," but that there was not clear and convincing evidence he "fully accepted responsibility" for the consequences to his victims. The Hearing Committee noted Brion's disposal of his records and files as showing lack of "consideration for his clients' interests" and precluding discovery of additional victims.

Concerning the third factor — extent of rehabilitation — the Hearing Committee addressed this together with the ninth factor, restitution, in its findings concerning Brion's compliance with our reinstatement conditions. It determined there were "no known restitution issues" because Brion had paid all known obligations and acknowledged Brion's willingness to pay any sums owed former clients and waive statutes of limitation issues, but it seemed unconvinced that without direct notice victims would pursue claims. And it noted his inability to satisfy the conditions relating to the forensic audit to determine whether other claims exist. The Hearing Committee was unsatisfied with Brion's explanation for disposing of his files, because his actions "ignore[d]" any additional obligations to his clients.

---

[15] *See id.*

Concerning the fourth factor — nature and seriousness of original misconduct — the Hearing Committee deemed Brion's misconduct to be in the "most serious" category.

Concerning the fifth factor — conduct following discipline — the Hearing Committee did not find clear and convincing evidence that Brion's conduct since disbarment "has been consistent" with that expected of a Bar Association member. It noted that his conduct in the earlier disciplinary proceedings demonstrated "complete disrespect," and it took issue with his disposal of his business records and client files. The Hearing Committee found Brion's "belated" acknowledgment of his wrongful conduct not entirely consistent with his position "that he did not cheat, steal[,] or lie to his clients."

Concerning the sixth factor — the time elapsed since disbarment — the Hearing Committee found clear and convincing evidence that the eight years elapsed since Brion's disbarment is consistent with readmission.

Concerning the seventh factor — comparing character, maturity, and experience at the time of discipline and at present — the Hearing Committee found insufficient evidence for the same reasons applying to the first factor.

Concerning the eighth factor — current competency and qualifications to practice law — the Hearing Committee found clear and convincing evidence that Brion's current competency is consistent with readmission based on his performance on the Multistate Professional Responsibility Examination and the attorneys' testimony concerning Brion's legal research and writing skills.

Concerning the ninth factor — restitution — the Hearing Committee discussed this as part of rehabilitation, the third factor discussed above.

Concerning the tenth factor — that reinstatement would not be detrimental — the Hearing Committee did not find clear and convincing evidence that Brion's return

to practicing law would not be detrimental to the Bar Association, the administration of justice, or subversive of the public interest. This finding was based on the unresolved reinstatement conditions and the explanations provided under other factors, including present moral fitness; acceptance of wrongdoing; conduct following the discipline; and comparing the petitioner's present and prior character, maturity, and experience.

The Hearing Committee determined Brion had complied with reinstatement conditions other than those relating to the forensic audit and the reinstatement plan. The Hearing Committee considered that Brion had made a good faith attempt at a reinstatement plan but had concerns because his plan was terminable by either party, did not prevent him from handling cases outside of Brattain's practice, did not provide an alternative mechanism in the event of termination, and did not provide an opportunity for him to manage funds with oversight. Noting Brion's substantial compliance with continuing legal education requirements, the Hearing Committee recommended more tailored courses if he planned to resubmit a reinstatement petition.

### 4.    Disciplinary Board

A brief oral argument before the Disciplinary Board took place in May 2019. Bar Counsel asked the Disciplinary Board to accept the Hearing Committee's recommendation. Brion's attorney argued that the Hearing Committee had unfairly focused on the two reinstatement conditions relating to the forensic audit and had not lent sufficient weight to all the "unequivocal" witness testimony. He argued that if we were to relieve Brion of the impossible conditions relating to the forensic audit, Brion otherwise presented clear and convincing evidence of fitness to practice law. The Disciplinary Board ultimately adopted the Hearing Committee's findings, conclusions, and recommendation.

### 5. Appeal

Brion appeals the Hearing Committee's findings of fact, conclusions of law, and recommendation adopted by the Disciplinary Board. Brion argues that: (1) Bar Counsel's failure to take a position on the reinstatement petition's merits is a denial of due process; (2) we need not defer to the findings, conclusions, and recommendation against reinstatement; (3) the Disciplinary Board erred by imposing an impossible condition; and (4) the Disciplinary Board erred by adopting the Hearing Committee's evidence weighing and application of reinstatement standards.

## III. STANDARD OF REVIEW

"We will independently exercise our judgment concerning a reinstatement petition in at least two respects: we independently review the entire record while giving the Board's findings of fact great weight, and we independently exercise our judgment concerning the Board's recommendation."[16] "Where findings of fact entered by the Board are challenged on appeal to this court, . . . the respondent attorney bears the burden of proof in demonstrating that such findings are erroneous."[17] "Though disbarment is not considered to be a permanent condition, there is a presumption against reinstatement after disbarment."[18]

---

[16] *Wiederholt V*, 295 P.3d at 401 (citing *In re Reinstatement of Wiederholt* (*Wiederholt IV*), 182 P.3d 1047, 1048 (Alaska 2008)).

[17] *Wiederholt II*, 24 P.3d at 1222-23 (quoting *In re Discipline of Triem*, 929 P.2d 634, 640 (Alaska 1996)).

[18] *Wiederholt V*, 295 P.3d at 401.

## IV. DISCUSSION

### A. Due Process

Brion argues that Bar Counsel's failure to take a position on the reinstatement request is a denial of due process because Brion "never received sufficient notice" of what to "prove or disprove." Brion also alleges he was deprived of the opportunity to fully confront issues because Bar Counsel was not required to take a position. We reject each of Brion's arguments.

The standards for a suspended or disbarred attorney seeking reinstatement in Alaska are well-established.[19] In contrast to Bar Counsel bearing the burden of proof in disciplinary proceedings, the petitioner bears the burden of proof in reinstatement proceedings.[20] Brion acknowledges that he faced an impartial trier of fact, that he had the opportunity to present evidence, and that his burden of proof was clear from the outset.

"Due process is satisfied if the statutory procedures provide an opportunity to be heard in court at a meaningful time and in a meaningful manner."[21] The Bar Rules require Bar Counsel to "appear at reinstatement hearings requested by suspended or disbarred attorneys"[22] and allow Bar Counsel to "cross-examine the Petitioner's

---

[19]     *See id.* at 399-400 (detailing standards for petitioner seeking reinstatement to practice of law).

[20]     *Compare* Alaska Bar R. 22(e) (requiring Bar Counsel prove misconduct by clear and convincing evidence), *with* Alaska Bar R. 29(c)(1) (requiring petitioner demonstrate entitlement to reinstatement by clear and convincing evidence).

[21]     *See Berry v. Berry*, 277 P.3d 771, 774 (Alaska 2012); *see also Matanuska Maid, Inc. v. State*, 620 P.2d 182, 192 (Alaska 1980) ("The crux of due process is opportunity to be heard and the right to adequately represent one's interests.").

[22]     *See* Alaska Bar R. 11(a)(16).

witnesses and submit evidence in opposition to the petition."[23]  The Bar Rules do not require Bar Counsel to take — nor prevent Bar Counsel from taking — a position on a reinstatement petition.  Bar Counsel cross-examined all but one of Brion's witnesses, and the Hearing Committee consistently questioned witnesses concerning the evidence Brion presented.

Nothing suggests that Brion was deprived of a meaningful opportunity to prove by clear and convincing evidence that he should be reinstated.  His due process arguments are without merit.

B.	**Deference To Factual Findings**

Brion asserts that the Hearing Committee's findings, conclusions, and recommendation adopted by the Disciplinary Board were not based on "competent witness testimony or adverse evidence."  The Bar persuasively contends — and Brion concedes — that Bar Counsel was not required to call adverse witnesses and that the Hearing Committee was entitled to weigh the credibility and sufficiency of witnesses' testimony.  But Brion argues that because Bar Counsel did not call witnesses or present opposing evidence there was no "conflicting evidence," meaning that we need not defer to the underlying findings.

Brion's argument relies on the faulty premise that the Hearing Committee could not, as it did, draw negative inferences or discount any of his witnesses.  This appeal point actually seems to concern the standard of review.  As noted, we "afford great weight to the [Disciplinary] Board's findings of fact,"[24] but ultimately we

---

[23]	*See* Alaska Bar R. 29(c)(3); *see also Wiederholt II*, 24 P.3d 1219, 1231 (Alaska 2001) (noting Bar is "not required to present witnesses to make out its case").

[24]	*Wiederholt IV*, 182 P.3d 1047, 1048 (Alaska 2008); *see also Wiederholt V*, 295 P.3d at 401 ("[W]e independently review the entire record while giving the
(continued...)

-19-	**7437**

independently review the entire record and exercise our own judgment concerning reinstatement.[25] Having done so, we agree with the Disciplinary Board's decision.

## C.     Reinstatement Conditions

Brion argues that the Hearing Committee erred by imposing impossible reinstatement conditions relating to the forensic audit. These allegedly impossible reinstatement conditions refer to conditions c and d, listed in our order disbarring Brion:

> c.     Brion is required to pay for a forensic audit of his law firm related accounts for the three years prior to his suspension to determine whether client funds were properly allocated or refunded;

> d.     Brion is required to make repayment of any losses discovered in the course of the forensic audit . . . .[26]

Brion indicated that his "poor decision" to dispose of his client files and business records makes it impossible to fully comply with these conditions. Brion argues that by publishing notice in the Alaska Journal of Commerce attempting to reach clients who had not been reimbursed and by expressing willingness to waive procedural defenses to future client claims he "substantially complied." He contends that the Hearing Committee and Disciplinary Board erred by failing to find this substantial compliance acceptable. But the Hearing Committee and Disciplinary Board were unconvinced that other victims would pursue claims without direct notice.

---

**24**     (...continued)
[Disciplinary] Board's findings of fact great weight, and we independently exercise our judgment concerning the [Disciplinary] Board's recommendation.").

**25**     *Wiederholt IV*, 182 P.3d at 1048.

**26**     *In re Discipline of Brion*, No. S-13722 (Alaska Supreme Court Amended Order, Mar. 24, 2010).

There was no error in determining Brion had not complied with these conditions. Brion should have known, regardless of whether he continued practicing law, that disposing of his files would complicate efforts to reach other victims. Brion's explanation does not rectify his regrettable decision, much less make whole any unknown victims. His attempt to achieve compliance by publishing a single notice in the Alaska Journal of Commerce is wholly unsatisfactory. Substantial compliance with these reinstatement conditions may be achievable, but Brion would have to fashion a meaningful substitute.

## D.    Recommendation Denying Reinstatement

Brion argues that the Hearing Committee erred in weighing the evidence and applying the reinstatement standards. As noted, when seeking reinstatement a petitioner must prove by clear and convincing evidence "(1) that [the petitioner] has the moral qualifications, competency, and knowledge of the law requisite to the practice of law; and (2) that [the petitioner's] reinstatement will not be detrimental to the Bar, the administration of justice, or the public interest."[27]

The Hearing Committee identified two pervasive problems. It first found Brion had not proved by clear and convincing evidence that he had "fully accepted responsibility." The Hearing Committee was troubled that Brion made no attempt to apologize to any victim and that Brion did not make his required restitution payment until shortly before the hearing, and then only at Bar Counsel's insistence. We agree that Brion has not sufficiently shown his sincere remorse.

The Hearing Committee also determined that Brion's witnesses were unfamiliar with the conditions contributing to his misconduct and thus unable to make a meaningful comparison with his present situation. It was not wrong to discount

---

[27]     *Wiederholt V*, 295 P.3d at 399.

witnesses due to their unfamiliarity with the circumstances leading to Brion's suspension and disbarment.[28] And Dr. Graber, who met Brion for a total of four sessions beginning only one month before the hearing, did not comprehensively address Brion's issues at the time of his misconduct. Dr. Graber knew that Brion had seen a psychiatrist years ago, but Dr. Graber did not know the reason or duration and had not seen records from that treatment. Brion provided insufficient evidence of the circumstances surrounding his misconduct, making it difficult to gauge the likelihood of his repeating the misconduct; he thus failed to show that he is morally fit to practice law and that his reinstatement will not be subversive to the public interest.

In light of these pervasive issues and the unsatisfied forensic audit reinstatement conditions, we agree that Brion failed to meet his burden of proof for reinstatement.

## V.     CONCLUSION

The petition for reinstatement is DENIED.

---

[28]     *See Wiederholt II*, 24 P.3d at 1230 (discounting testimony of witnesses who do not know about petitioner's past wrongdoing).